## A99A1791. O'HARA v. THE STATE.
### (528 SE2d 296)

SMITH, Judge.

Emory O'Hara was convicted of armed robbery and loitering. Following the denial of his motion for new trial, O'Hara filed this appeal challenging the sufficiency of the evidence, the trial court's refusal to permit his custodial statement to be read to the jury, and the court's questioning of two witnesses summoned on behalf of the prosecution. Finding no error, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict, and O'Hara no longer enjoys the presumption of innocence. *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998). The evidence, when viewed in that manner, established that at about 5:00 a.m., two men robbed a convenience store clerk at gunpoint. The clerk identified O'Hara as the robber who pointed a pistol at him from the doorway. The victim described the perpetrators' race, height, and clothing to police and stated that both had worn shiny, black pants made from either a nylon or silk material. After robbing the store, the two men immediately fled on foot. Within two minutes of the clerk's 911 call, police began responding. One officer spotted two males who fit the broadcast description of the robbers behind a nearby apartment complex. When this officer directed a spotlight toward them, the suspects fled. He recovered a .32 revolver from the ground where the suspects had been standing moments before. The victim believed this gun was the weapon used in the robbery.

Meanwhile, by chance, Willie Smith, a corrections officer, was in the immediate vicinity where the perpetrators had fled. Smith was in the process of demonstrating his wife's newspaper route to a friend scheduled to assume the route temporarily. After marking a curb, Smith stood up and then noticed a young man, later identified as O'Hara, standing a few feet away. When O'Hara asked for a ride to a specified location, Smith told him if he could wait until he finished marking his route, he would drop him off close to that area. After O'Hara climbed into the bed of the truck and lay down, Smith asked him, "if he'd done anything crazy," "robbed anybody or shot anybody or anything like that." O'Hara denied doing so. With increasing concern for his personal safety, Smith suggested they approach a policeman who was searching in a nearby field. But O'Hara responded, "[n]o, just get me out of here."

Partially because of the anxiety O'Hara displayed, Smith flagged down an officer driving toward him. Noticing that Smith was motioning toward the rear of his truck, Officer Joel McNeal saw O'Hara peering up at him. Officer McNeal also noticed that O'Hara was sweating profusely and that his clothing was dirty and torn. After O'Hara leaped out of the truck bed and "hit the ground running," the officer drew his weapon. O'Hara continued to flee, although he eventually complied with the officer's repeated commands to stop. O'Hara had abrasions and marks on his hands, consistent with being jabbed by a chain link fence. O'Hara was apprehended within three city blocks of the site of the robbery.

Another officer began studying certain footprints newly formed in some dew and extending from a footpath. According to the officer, this trail was about 150 to 200 yards from the location of the robbery. Although unable to take a casting from the wet grass, police were

convinced that the tread on O'Hara's tennis shoes provided a match. Upon tracing the footpath, an investigator discovered a pair of discarded black nylon pants with a small cut by the right pocket.

1. O'Hara contends that the evidence was insufficient to support his conviction for loitering. He claims that since the State failed to prove that he had been afforded an opportunity to explain his presence and conduct before being placed under arrest, his conviction under OCGA § 16-11-36 (b) cannot stand. We disagree.

Subsection (b) provides in relevant part:

> Unless flight by the person or other circumstances make it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this Code section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this Code section if the law enforcement officer failed to comply with the foregoing procedure or if it appears at trial that the explanation given by the person was true and would have dispelled the alarm or immediate concern.

OCGA § 16-11-36 (b). In this case, O'Hara attempted to elude discovery and capture by police. As an officer approached the vehicle in which O'Hara was hiding, O'Hara immediately attempted to flee. Even after being detected, pursued, and ordered to stop by an officer pointing a gun at him, O'Hara did not immediately halt. Given O'Hara's flight combined with his peculiar behavior and appearance, the investigating officer might well have considered the circumstances impracticable for seeking an explanation from O'Hara concerning his presence and conduct.[1] Although O'Hara argues otherwise, a rational trier of fact could have found beyond a reasonable doubt that O'Hara was present at an odd place, at a suspicious time of day, exhibited an unusual appearance, and was behaving in a bizarre manner atypical of law-abiding individuals. See *Blair v. State*, 216 Ga. App. 545, 547 (2) (455 SE2d 97) (1995); see OCGA § 16-11-36 (a) for the elements of this crime. This evidence was sufficient within the meaning of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to sustain the conviction for loitering.

2. O'Hara asserts that the trial court erred by refusing to permit

---

[1] Later, after being provided the requisite warnings mandated by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), O'Hara denied any involvement in the robbery and claimed that he was out there because he had gotten into an argument with a friend named "T."

him to read to the jury a copy of the statement he had given to police. He claims that under the rule of completeness, he should have been allowed to read it in its entirety.

A witness may be impeached by his own prior contradictory statements. OCGA § 24-9-83. Here, both before and during the trial, O'Hara implicated a person named "T" as the perpetrator. But his two renditions of the surrounding circumstances and narration of events bore little resemblance to each other. On cross-examination, the State sought to impeach O'Hara with numerous inconsistences and deviations between the custodial statement he had provided to investigators and his courtroom testimony. After perusing his signed statement, O'Hara vouched for its accuracy yet claimed that the typed statement did not accurately correspond with what he had told police. When defense counsel sought to have O'Hara read the statement to the jury, the court refused to allow him to do so.

Prior inconsistent statements are generally admissible to impeach a witness. *Tommie v. State*, 158 Ga. App. 216, 217 (2) (279 SE2d 510) (1981). A prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence and is not limited to use for impeachment purposes only. *Gibbons v. State*, 248 Ga. 858, 862-863 (286 SE2d 717) (1982). In this case, O'Hara's entire custodial statement was admitted into evidence, so the jury was free to determine what meaning, weight, and credibility to accord that statement. *Toledo v. State*, 216 Ga. App. 480, 481 (2) (455 SE2d 595) (1995). Even assuming that the trial court erred in refusing to permit O'Hara to read aloud his prior statement, any error was harmless. *Duckworth v. State*, 268 Ga. 566, 569 (2) (492 SE2d 201) (1997).

3. O'Hara contends that the trial court erred by questioning witnesses and by summoning two witnesses on the prosecution's behalf. He claims that the court enhanced the credibility of these witnesses by calling them as court witnesses. We disagree.

Despite acknowledging the accuracy of his custodial statement, O'Hara claimed he had told police that he wanted a lawyer present and had refused to answer certain questions. After O'Hara testified that he had been threatened by police unless he implicated himself, the trial court ordered the State to produce both officers whom O'Hara had named.

"A trial court has the right to develop fully the truth of a case, and may exercise this right by examining witnesses called by the parties, or by calling its own witnesses." (Citations omitted.) *Ashley v. State*, 263 Ga. 820, 822 (3) (a) (439 SE2d 914) (1994). In calling these witnesses, the trial court did not abuse its discretion.

During the State's examination of the first officer, Detective Lawrence Bender, the court interposed this instruction: "I want you

to tell them exactly what happened and whether or not he signed it and whether he signed it freely and voluntarily and whether you explained it to him, do you understand that?" Although this directive by the court might have been more perfectly phrased, we cannot agree that it constituted a judicial comment on the veracity of the witness. See *Harris v. State*, 202 Ga. App. 618, 619 (3) (a) (414 SE2d 919) (1992). Nor does the record show that O'Hara objected. Id. at 620.

Although a trial court may propound questions, it may not express an opinion or intimate to the jury what has or has not been proved. *Thomas v. State*, 240 Ga. 393, 400 (3) (242 SE2d 1) (1977). The purpose of this limitation, in part, is to prevent the jury from being influenced by any disclosure as to the judge's opinion of a witness's credibility. *Wilcox v. State*, 236 Ga. App. 235, 236 (1) (511 SE2d 597) (1999); see also OCGA § 17-8-57.

During the State's questioning of Detective James McClinton, the other interrogating officer, McClinton claimed that since he typed O'Hara's statement as the comments were being made, it was very unlikely that he had missed anything of significance. While McClinton was still being questioned by the prosecutor, the court briefly engaged in this colloquy:

THE COURT: You've been a policeman for 20 something, haven't you?
THE WITNESS: Yes sir. And I typed while I was in the military.
THE COURT: Are you still thinking about retiring in September?
THE WITNESS: No, sir, October the 30th.
THE COURT: I've told you, you can't go unless I did.

Although this inquiry did not rise to the level of advocacy or imply the court's approval of the detective's testimony, the remarks did seem to suggest approval of this detective. *Henry v. State*, 265 Ga. 732, 740-741 (9) (462 SE2d 737) (1995); see *Dixon v. State*, 196 Ga. App. 15, 18 (7) (395 SE2d 577) (1990). Such personal remarks by a court should be avoided to prevent even the slightest intimation of partiality. See id. To safeguard the court's neutrality, whenever a court calls its own witness, the better practice is to instruct the jury that by calling a witness, the court suggests nothing about credibility and that this witness is to be assessed like all other witnesses. See *Henry*, supra (Fletcher, P. J., concurring). Nevertheless, we cannot agree with O'Hara that the trial court undermined the integrity of the process or improperly enhanced the credibility of this witness by engaging in this brief, friendly exchange to which O'Hara posed no

objection. *Mullins v. State*, 269 Ga. 157, 159 (3) (496 SE2d 252) (1998); see *Smith v. State*, 158 Ga. App. 330, 331 (2) (280 SE2d 162) (1981).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED JANUARY 19, 2000.

*William J. Mason*, for appellant.

*J. Gray Conger, District Attorney, Alonza Whitaker, Assistant District Attorney*, for appellee.