## A02A1662. JAMES v. THE STATE.
(580 SE2d 334)

BARNES, Judge.

A jury convicted Kwame James of driving under the influence of alcohol to the extent he was a less safe driver and of making an improper lane change. James had earlier pled guilty to the offense of speeding. He appeals, contending the trial court erred in granting the State's motion to exclude certain evidence about the arresting officer's training and certification, and erred in restricting the testimony of his expert witness regarding field sobriety tests. For the reasons that follow, we reverse.

1. At the hearing on the State's motion in limine, the State argued that it was offering the police officer "strictly as a [Peace Officer Standards and Training] certified law enforcement officer. We will not be offering him as a [National Highway Traffic Safety Administration] certified officer." The State therefore asked the trial court to prohibit the defense "from doing any sort of cross examination into the NHTSA training that this officer may or may not have, [or] into the requirements that NHTSA has set forth for the administration of field sobriety evaluations." The State responded affirmatively when the trial court asked if it were going to present the police officer "as a lay person with training through the academy," and was not going to present him as an expert witness. Relying on *Cantwell v. State*, 230 Ga. App. 892 (497 SE2d 609) (1998), the trial court granted the State's motion, ruling that the State could put up the officer "as POST certified training through the academy and that — of what he learned at the academy insofar as the leg lift, the [horizontal gaze nystagmus], the walk and turn. This will not include the clues and other matters that are covered by nystagmus."

"The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him." OCGA § 24-9-64.

> The right of cross examination is a substantial right, the preservation of which is essential to the proper administration of justice and extends to all matters within the know-

ledge of the witness, the disclosure of which is material to the controversy. This right should not be abridged.

*Fair v. State*, 140 Ga. App. 281, 282 (1) (231 SE2d 1) (1976). "It is the duty of the court both to protect a witness under cross-examination from being unfairly dealt with, and to allow a searching and skillful test of his intelligence, memory, accuracy and veracity. As a general rule, it is better that cross-examination should be too free than too much restricted." *Harris v. Central Railroad*, 78 Ga. 525, 534 (3 SE 355) (1887). "The right of cross-examination in this state includes questioning a witness about subjects relevant to any of the issues in the case, not simply those matters elicited on direct examination." *Stone v. State*, 250 Ga. 718, 719 (300 SE2d 500) (1983). We review a trial court's ruling that curtails a cross-examination for abuse of discretion. *Stevens v. State*, 213 Ga. App. 293, 294 (2) (444 SE2d 840) (1994).

The officer testified at trial that he was trained to do the HGN test at the DeKalb Police Academy, through classroom instruction followed by a test. He described "nystagmus" as

> an involuntary jerking in the eyes. It's generally not visible. Like right now you can't see it on me or you or probably anybody here, but, just like a lot of other things, alcohol tends to slow down motor response and when someone's under the influence of alcohol it tends to slow down the whole system making the jerking more visible, more distinct.

After describing the mechanics of the test, he testified that he administered the test to James and described what the results meant.

> Well, I was first looking to see if there was any nystagmus at maximum deviation, which means that when I actually started administering the test and bringing my hand all the way out to where it's extended, usually it will bring the eyes all the way over to where there is no white on the side that — the direction they're in. Or if I bring it all the way over to the left when they look left there should be no white to their left. At that point, at maximum deviation, I'm looking to see if the eyes are bouncing or jerking at all. . . . That's in the same part of when I'm looking for equal tracking, looking for smooth pursuit, and when I stop that the pupils are of the same size. . . . Well, again, I'm looking to see — to make sure that there is or is not the jerking out at maximum deviation. Once I determine whether there is or isn't I come back to center and then I will move to either side slowly. Well, a good gauge is usually someone's shoulder. I'm looking

for — to see if the jerking happens before 45 degree angle. An approximation being usually around someone's shoulder.

The arresting officer then testified that James had nystagmus at maximum deviation and before the onset of 45 degrees, signs which his training taught him were a result of slowed motor response due to alcohol impairment.

In this case, the arresting officer testified at a motion hearing that he had been NHTSA-certified in field sobriety evaluations shortly before he performed those evaluations on James. James's proffered expert witness, the alcohol and drug coordinator for Georgia POST training, testified that POST adopted the NHTSA student manual booklet to teach in all Georgia police academies beginning in August 1995. POST-approved academies are currently teaching the NHTSA standardized field sobriety evaluations, which include rigidly prescribed testing methods. Deviation from those methods severely compromises the accuracy of the evaluations, the expert testified.

The trial court's ruling prevented James from asking the arresting officer about his NHTSA training, which was clearly "material to the controversy" before the court and an abridgment of James's substantial right of cross-examination. *Fair v. State*, supra, 140 Ga. App. at 282. In reaffirming that evidence regarding an HGN test is admissible without first requiring expert testimony as a foundation, this court held that

> Clearly HGN testing, although far from a complex procedure, may be subject to human error in its administration or interpretation; however, such potential for error does not impact on the validity of the HGN test; no procedures are infallible. An accused may always introduce evidence of the possibility of error. Such evidence would relate to the weight rather than the admissibility.

(Citations and punctuation omitted.) *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996).

*Cantwell v. State*, supra, 230 Ga. App. at 892, does not require a different result. This court in *Cantwell v. State* held that,

> if the State chooses to have the officer testify as a lay witness and describe the actions of the defendant in performing simple exercises such as the "leg lift" and "walk and turn" without referring to any "points" system or using the words "pass" or "fail," cross-examination on NHTSA procedures is irrelevant, regardless of whether the officer is trained in them or not. Moreover, it is perfectly proper to allow the

officer to testify as a lay witness on these matters. Physical manifestations of impairment when performing the "walk and turn" and "leg lift" sobriety tests can be as obvious to the layperson as to the expert. Accordingly, the trial court did not abuse its discretion in prohibiting Cantwell from cross-examining the officer on NHTSA procedures.

(Citation and punctuation omitted.) Id. at 893 (1). In *Cantwell*, the officer testified, as a layman, that the defendant was unable to keep his head still during the HGN test, an obvious physical manifestation of impairment that requires no training. In contrast, the arresting officer in this case testified in detail regarding the positions and timing of an involuntary jerk in James's eyes while following a prescribed pattern of testing, which he asserted showed that James was under the influence of alcohol. Whether an HGN test demonstrates impairment is not as obvious to the layperson as to the expert. Compare *Cantwell v. State*, supra, 230 Ga. App. at 893.

This error was not harmless. The State presented no evidence of breath or blood tests,[1] but relied entirely on the officer's testimony regarding his field sobriety evaluation to prove its case. Because "a jury is entitled to know all of the facts upon which the witness' opinion rests and the facts may be brought out on cross-examination," James's substantial right to effective cross-examination was abridged by the trial court's ruling. *Eason v. State*, 260 Ga. 445, 446 (2) (396 SE2d 492) (1990), overruled on other grounds, *State v. Lucious*, 271 Ga. 361, 365 (4) (b) (518 SE2d 677) (1999); *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982). We therefore reverse and remand for a new trial.

2. James also contends that the trial court abused its discretion in restricting the direct testimony of his expert witness on field sobriety tests, the NHTSA rules, and the consequences of failing to comply with NHTSA training. For the reasons stated in Division 1, we agree that the trial court abused its discretion in this regard.

*Judgment reversed. Ruffin, P. J., and Adams, J., concur.*

DECIDED MARCH 26, 2003.

*William C. Head*, for appellant.

---

[1] The parties stipulated that the State would not mention any evidence of James' refusing a breath test or of giving implied consent warnings; apparently some dispute existed regarding whether the breath test machine was working properly.

*Gwendolyn R. Keyes, Solicitor-General, Kimberly A. Sanders, Assistant Solicitor-General*, for appellee.