A04A1420. GOODRUM v. THE STATE.
(604 SE2d 251)

PHIPPS, Judge.
Bertram Goodrum was convicted of violating the Georgia Controlled Substances Act by trafficking in cocaine. He claims that the

---

trial court intimated that a defense witness was lying and, for that reason, should have granted his motion for mistrial. In two separate claims of error, Goodrum argues that the evidence was insufficient to prove beyond a reasonable doubt that he knowingly possessed more than twenty-eight grams of a mixture with a purity of ten percent or more of cocaine. We affirm.

Viewed in the light most favorable to the verdict, the evidence showed that Goodrum ran an auto repair shop, which was located next to his house. On December 14 and 15, 1999, while working with the Athens-Clarke County Police Department on a drug investigation, Sergeant Chris Cannon of the Walton County Sheriff's Department set up video surveillance of the area outside Goodrum's repair shop. The resulting videotapes showed Goodrum on several occasions going to a car parked on the street in front of his shop, opening the trunk and having what appeared to be hand-to-hand transactions with other people. From his location across the street, Cannon did not see any money or drugs being exchanged.

On December 15, Clarke County Deputy Sheriff John Dove went to Goodrum's house. Dove found Goodrum nearby and asked him if the car in the surveillance tapes belonged to him. Goodrum replied that it belonged to a customer. Dove explained that he had received information that illegal drugs were being sold out of the car and asked Goodrum for the keys. Goodrum took the keys from his pocket and threw them against the car. Dove obtained the keys, opened the trunk and found what he suspected was crack cocaine. Goodrum was then handcuffed, searched and placed in a patrol car. Based on the drugs found in the car, Goodrum was charged with possession of more than twenty-eight grams of a mixture containing ten percent or more of cocaine.

That same day, Agent James Galliard with the Athens-Clarke County Drug Task Force executed a search warrant at Goodrum's residence. One bedroom of the house was locked with a deadbolt. In that room, Galliard found a box of plastic sandwich bags, aluminum foil, "corner baggies" (the corner of a sandwich bag that has been cut off), 25 or 27 $100 bills and razor blades. Galliard testified that, in his experience, sandwich bags, foil and corner baggies are all commonly used to package drugs, and razor blades are used to cut cocaine or crack cocaine. He also found in the bedroom closet two safes which contained several watches, rings and necklaces. Galliard testified that he had investigated cases in the past where people selling illegal drugs took jewelry instead of money as payment.

1. Goodrum claims that the trial court abused its discretion by denying his motion for mistrial after the court questioned a defense witness. At issue is an exchange between the court and Kenneth Davis, the owner of the car where the drugs were found. Davis

testified that he had parked his car on the street between Goodrum's house and auto shop to have repair work done. He testified that he had cigarettes, cigars, clothes, marijuana and cocaine in his trunk and that he went into the trunk several times a week to retrieve the drugs. Davis claimed ownership of the drugs that Goodrum was charged with possessing.

During cross-examination, Davis was asked what he was doing with the drugs. Davis testified that "I sold some now and then, but, you know, I wasn't at the time selling drugs to no one, you know." The court then questioned Davis as follows:

> THE COURT: Wait a minute. Hold on. You're — you're telling me and this jury you were selling drugs and you left the drugs in the back of the car at somebody else's place.
> DAVIS: Yeah, I never carried around with me until somebody wanted it. Why would I — I wouldn't walk around all day with drugs in my pocket trying to sell them, you know.
> THE COURT: So why did you leave them in the car?
> DAVIS: That's just where I stashed them at.
> THE COURT: And then you left the car with Mr. Goodrum?
> DAVIS: Yes, sir.

At that point, Goodrum's counsel moved for a mistrial based on the court's questioning of Davis. Counsel stated that the court "literally rolled your eyes up in response to the last question as if that's absolutely a lie." Goodrum also argues that the wording of the court's first statement made it clear the court did not believe Davis.

The court denied the motion for mistrial and instructed the jury as follows:

> . . . before you all were asked to go out the Court asked a question of Mr. Davis. If the Court made any body movements or motions but — with his body or head or eyes in any way, it was not intended to influence you all in any way on the truthfulness of the testimony being made by this person. If there's any juror that felt that the Court did make a body motion that will affect them, that they could not listen to the evidence and render a verdict based on the evidence we've heard now, please raise your hand. Let the record reflect nobody raised their hand.

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to

what has or has not been proved or as to the guilt of the accused."[1] But the trial court may propound questions to any witness to develop the truth of the case.[2] Here, the court asked questions of Davis to clarify his testimony and did not express or intimate an opinion as to proof or as to guilt; nor was the questioning argumentative.[3] We have previously held that a trial judge's tone of voice is not reviewable.[4] Without a videotape of the exchange, we are similarly unable to review Goodrum's claim that the court intimated an opinion by facial expressions. We find that the trial court did not abuse its discretion by denying Goodrum's motion for mistrial.[5]

2. Goodrum challenges the method used to weigh the cocaine he allegedly possessed. The cocaine was analyzed in two separate samples, and each sample was analyzed by a different chemist.

The first sample, which consisted of 28 individually-wrapped packages, was analyzed by Michelle Young, a forensic chemist with the Georgia Bureau of Investigation (GBI). She determined that the weight of the substance, without packaging, was 4.1 grams and that the substance was 88.6 percent pure cocaine. Young testified that the packages were wrapped in foil and that they all appeared to be the same size. She first weighed the entire sample, with the foil wraps, to obtain a gross weight. She then weighed one of the foil wraps and multiplied that number by 28 to get the total weight of the wraps. Finally, she subtracted the weight of the wraps from the gross weight to arrive at a net weight for the cocaine mixture. Young took photographs of the individually-wrapped packages and the photographs were displayed to the jury.

The second sample, which consisted of approximately 35 separate plastic bags, was analyzed by Amelia Olsen, a former forensic chemist with the GBI. She testified that she used basically the same procedure to weigh the cocaine mixture she was given. She testified that the bags "all looked about the same" and that she weighed one or two of the bags. Olsen determined that the weight of the substance, without packaging, was 28.4 grams. She testified that it was a generally accepted procedure to estimate the weight of the packaging by the method she used.

Goodrum argues that the chemists should have weighed all of the packaging instead of weighing one piece and estimating the total

---

[1] OCGA § 17-8-57.

[2] *Eubanks v. State*, 240 Ga. 544, 547 (2) (242 SE2d 41) (1978); see also *Shields v. State*, 272 Ga. 32, 34-35 (5) (526 SE2d 845) (2000).

[3] See *Shields*, supra.

[4] *Perdue v. State*, 147 Ga. App. 648, 652 (9) (249 SE2d 657) (1978).

[5] See *Jackson v. State*, 251 Ga. App. 171, 172-173 (1) (554 SE2d 202) (2001); see also *Fernandez v. State*, 263 Ga. App. 750, 753 (3) (589 SE2d 309) (2003).

weight. He points out that the weight of the cocaine mixture was close to the minimum for a trafficking conviction and argues that the fact that the analysis was performed by two different chemists increased the potential for error.

Here, the chemists weighed all of the cocaine mixture used to convict Goodrum but weighed only a representative sample of the packaging.[6] Both chemists testified that the packages they analyzed appeared to be the same size and the jury was able to make its own determination of the uniformity of the packages wrapped in foil because photographs of those packages were entered in evidence. Although the weight of the cocaine mixture (including both samples) was only 4.5 grams more than the minimum required for a trafficking conviction, we find that there was sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the cocaine mixture Goodrum was charged with possessing weighed 28 grams or more.

3. Goodrum claims that the evidence was insufficient to prove beyond a reasonable doubt that he "knowingly" possessed cocaine. He points to Davis's testimony that he had cocaine in the car, that he went by several times a week to get cocaine out of the trunk, that he had not told Goodrum that he had drugs in the trunk and that he trusted Goodrum not to search through his car. Goodrum also relies on his own testimony that he sold cigarettes out of the trunk of the car, with Davis's permission, that he had never seen any drugs in the car and that, if he had, he would not have gone near it.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the appellant is no longer entitled to a presumption of innocence.[7]

> An appellate court does not weigh evidence or determine witness credibility, but determines only if the evidence is sufficient under the standard of *Jackson v. Virginia*[8] to support a finding of guilt beyond a reasonable doubt. Conflicts in testimony are a matter of credibility for the jury to resolve. And as long as there is some competent evidence, even though contradicted, to support each fact necessary for the state's case, the jury's verdict will be upheld.[9]

---

[6] Cf. *Means v. State*, 188 Ga. App. 210 (2) (372 SE2d 484) (1988); *Hancock v. State*, 212 Ga. App. 78 (441 SE2d 261) (1994).

[7] *Nunnally v. State*, 261 Ga. App. 198 (1) (582 SE2d 173) (2003).

[8] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[9] (Footnotes omitted.) *Nunnally*, supra.

Having reviewed the evidence under that standard, we hold that there is sufficient evidence from which the jury was authorized to conclude beyond a reasonable doubt that Goodrum was guilty of being knowingly in possession of twenty-eight grams or more of a cocaine mixture with a purity of ten percent or more, as alleged in the indictment.[10] The jury was not required to believe Davis's testimony that the cocaine was his alone.[11]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 1, 2004.

*Thomas J. Killeen*, for appellant.
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.

---

[10] OCGA § 16-13-31 (a).
[11] See *Crenshaw v. State*, 248 Ga. App. 505, 507 (1) (546 SE2d 890) (2001).