## A04A1293. HOWREN v. THE STATE.
### (608 SE2d 653)

PHIPPS, Judge.

A jury found Jerry Mitchell Howren, Jr. and his co-defendant, Steven Yarbrough, guilty of trafficking in methamphetamine in a quantity of less than 200 grams.[1] The trial court sentenced Howren as a recidivist. In this appeal, Howren challenges four evidentiary rulings and contends that the trial court erred by denying his ineffective assistance claim. He also contests the verdict on the basis that Yarbrough had equal access to the drugs in the car. Because Howren failed to establish the existence of reversible error, we affirm.

When viewed favorably toward upholding the verdict, the evidence shows that while officers were in the process of setting up a checkpoint, a silver Camaro driven by Yarbrough approached.[2] Howren was seated in the front passenger seat. Yarbrough was driving at a high speed and in the wrong lane. One of the officers directed Yarbrough to stop and he did so with difficulty. During a license check, the officers ascertained that Yarbrough's license was under suspension and that he lacked proof of insurance, so they arrested him. Yarbrough consented to a search of his car.

Behind the front passenger seat, officers found a camouflage fanny pack containing several plastic bags of methamphetamine. Inside this same camouflage pack, investigators discovered syringes, postal scales, a pocket digital scale, a slip of paper with amounts of money listed next to various names and initials, and a cell phone charger. Also, inside this same fanny pack was a piece of paper on which the number 3100 was handwritten. After discovering the contraband, the officers arrested Howren and seized more than $3,000 in cash from his person, an amount approximating the paper entry of 3100. Beneath the front, passenger side floor mat, an officer discovered a brown leather pouch holding additional bags of methamphetamine. During a more thorough search of Yarbrough's car, investigators found a black fanny pack under the driver's seat. Inside that black pack were two plastic bags containing methamphetamine, syringes, and a pipe. Beneath the driver's seat and next to that pack, investigators found a calendar notebook which contained a business card with Yarbrough's name on it and a handwritten list of names with amounts of money entered next to each name. Investigators determined that the cell phone charger removed from the camouflage pack was the same model as the cell phone that Howren had.

---

[1] Howren also was found guilty of possession of methamphetamine and possession with intent to distribute, but the trial court merged those convictions at sentencing.

[2] See *Yarbrough v. State*, 264 Ga. App. 848 (1) (592 SE2d 681) (2003) (the overlapping facts are set forth in greater detail there).

After the jury found both men guilty of trafficking, each filed a separate appeal. Yarbrough's conviction was also affirmed.[3]

1. Howren contends that the trial court erred by admitting evidence obtained as the result of an illegal roadblock. As this court previously found in *Yarbrough v. State*,[4] after the officer personally observed Yarbrough driving on the wrong side of the road and speeding, a lawful traffic stop ensued that was not the byproduct of a roadblock, lawful or otherwise.[5]

2. Howren asserts that the warrantless search of his property in Yarbrough's car violated his constitutional rights. He claims that because he had some personal belongings in Yarbrough's car, in the absence of his consent or any exigent circumstances, his property should not have been searched without a warrant.

This argument is flawed for two reasons. First, it is undisputed that Yarbrough owned the Camaro and consented to a search of it and that Howren denied ownership of the camouflage fanny pack or the leather pouch. When a passenger in a car does not assert a possessory interest either in the car or in its contents, he lacks standing to challenge the search of the car.[6] Second, at the suppression hearing, the officer testified that while the car was coming to a stop, he saw the passenger, Howren, "trying to put something around the seat." The officer testified that Howren appeared to be trying to put something "between his legs." From his vantage point the officer recalled that he "could see a hump between [Howren's] feet that . . . appeared to me . . . that something . . . was under the mat of the floorboard." He noticed that Howren kept "dropping his hands down" as though trying to conceal something under the floor mat or around the seat. Having observed such behavior, the officer had reasonable suspicion to investigate whether Howren was trying to hide a weapon or contraband.[7]

3. Howren argues that the trial court erred by admitting portions of his custodial statement about his past drug use that impermissibly injected his character into the trial. Howren also contends that when the state redacted his statement to remove Yarbrough's name, the redacted version materially altered the substance of his statement and prejudiced him by appearing to create an admission that he knew that drugs were in the car. He asserts that the improperly redacted statement undercut his defense that he did not know about the drugs.

---

[3] See id.

[4] Id.

[5] Id. at 849-850 (2).

[6] *Gilbert v. State*, 245 Ga. App. 809, 810 (539 SE2d 506) (2000).

[7] See *State v. Cooper*, 260 Ga. App. 333, 335 (2) (579 SE2d 754) (2003).

(a) Howren's character was not impermissibly injected into the case. In a custodial interview that occurred shortly after his arrest, Howren admitted being a user of methamphetamine and using some that day. Because Count 5 charged Howren with simple possession of methamphetamine, his admission that he had obtained and used methamphetamine that day may have been relevant to the offense as charged.

(b) As to Howren's complaint about the redactions, the inconsistencies are not attributable to the state's effort at redacting but are due to Howren's own equivocal comments. At one point, Howren said, "I didn't know [the camouflage bag] was under the passenger seat." He also denied ever having seen the black bag. Later, when asked a compound question that included references to "a pound of meth under your seat" and "this black bag with some more meth in it," Howren said, "[n]o, I didn't say I didn't know nothing about it." This admission, however, was not the byproduct of redaction. The state's Exhibit 3, a typed copy of Howren's custodial statement, shows that the only words redacted from this portion of his statement were "the marijuana." Before the state redacted the words "the marijuana," the text read:

> But you know Mr. Howren, a pound of meth under your seat, the marijuana, and in the back seat there was probably about another six or seven ounces of meth behind your seat and then under his seat was this black bag with some more meth in it. And I don't know. Now you are sitting here telling me you didn't know nothing [sic] about it?

Howren responded by saying, "[n]o I didn't say I didn't know nothing about it." Thus, Howren's self-contradictory statements about not having seen the black bag or knowing about the camouflage bag or knowing about the drugs in the car were not the byproduct of redacting any reference to Yarbrough from Howren's custodial statement. What weight and credibility to accord Howren's remarks, including his equivocal denial, was for the jury to decide.[8] The trial court did not err in allowing the redacted statement in evidence.

4. Howren contends that his convictions should be reversed because Yarbrough had equal or "even superior access" to the drugs confiscated in the search. He asserts that all the drugs were discovered in Yarbrough's car and that they were found mostly inside Yarbrough's belongings. He claims that with the proper application of

---

[8] See *O'Hara v. State*, 241 Ga. App. 855, 858 (2) (528 SE2d 296) (2000).

the equal access rule and the principles of mere presence and mere association, the evidence is insufficient to sustain the verdict against him.

The equal access rule entitles a defendant to acquittal when (1) the sole evidence of his possession of contraband is his possession of a vehicle in which contraband is found; and (2) others have equal access to the area where the contraband is found or the vehicle has recently been in the possession of others.[9]

Here, the equal access rule is inapplicable. The sole evidence of Howren's guilt is not his possession of contraband located in an area where another person had equal access. The record shows that Howren had more than $3,000 in cash on his person; the leather pouch and the camouflage fanny pack were found at or near his feet; Howren behaved suspiciously as though trying to hide something; the cell phone charger in the camouflage fanny pack was the same make as that of Howren's cell phone; the customer list found in the camouflage fanny pack was similar to the list in Yarbrough's day planner; and Howren made some self-incriminating comments during a custodial interview. From this evidence, a rational trier of fact could have found Howren guilty beyond a reasonable doubt of trafficking.[10]

5. Howren contends that the trial court erred in denying his motion for new trial based upon his ineffective assistance claim. He asserts that his trial counsel failed to introduce an exculpatory statement written by Yarbrough; failed to call two witnesses who overheard Yarbrough say that the drugs were his; failed to argue the equal access rule; and failed to call witnesses to explain the source of the $3,000.

To prevail on an ineffectiveness claim requires establishing not only that the performance of trial counsel was deficient, but also that the deficient performance so prejudiced the defendant as to create a reasonable probability of a different outcome in the trial.[11] Because this state does not recognize the cumulative error doctrine, we separately examine each claim of ineffectiveness.[12]

(a) Howren contends that his trial counsel was ineffective by failing to introduce his co-defendant's "exculpatory statement" that "clearly exonerated" him. He claims that at the hearing on his motion for new trial, "[a]n affidavit of said statement was tendered as Defendant's Exhibit 1."

---

[9] *Kantorik v. State*, 257 Ga. App. 828, 829 (2) (572 SE2d 690) (2002).
[10] See id. at 829-830.
[11] *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997).
[12] *Baker v. State*, 259 Ga. App. 433, 435 (3) (577 SE2d 282) (2003).

In the handwritten statement at issue, Yarbrough allegedly wrote the following:

> I Steve J. Yarbrough would like and will state that on Feb. 09, 2001 when I picked up Jerry Mitchell Howren Jr. at the residence of Sharon L. Hammond [h]e did not have no [sic] knowledge of any methamphetamine or any Schedule II Controlled Substance being in the 1995 Chevrolet Camaro, gray in color, tag [number], VIN.

Notwithstanding Howren's claim to the contrary, this written statement is not an "affidavit." It was not made under oath and does not comply with the elements essential for an affidavit.[13] Yarbrough's statement constitutes nothing more than inadmissible hearsay and lacks specific facts that would exonerate Howren.[14] Even assuming arguendo that Hammond, Howren's girlfriend, could have testified that when she last saw Howren at 10:00 or 10:30 a.m., he had no drugs, it is undisputed that the traffic stop did not occur until approximately 1:30 p.m., leaving several hours unaccounted for as to Howren's whereabouts and activities. Moreover, Yarbrough's written statement that Howren did not know about any methamphetamine being in the Camaro when Yarbrough picked up Howren at Hammond's house does not exclude the possibility that Howren did not know about the drugs because the drugs were not yet in the Camaro.

(b) Howren contends that his trial counsel failed to call two witnesses who overheard Yarbrough say that the drugs were his. Specifically, Howren faults his counsel for not calling as defense witnesses, a jailer and a notary employed by the sheriff's department. At the motion for new trial hearing, neither the jailer nor the notary testified. Absent a proffer of the uncalled witnesses' testimony, Howren failed to show that their testimony would have been favorable and that it would have created a reasonable probability of a different outcome at trial.[15]

(c) Howren's contention that he was harmed by his trial counsel's failure to argue the equal access rule lacks merit. See Division 4.

(d) Howren complains that his trial counsel failed to call witnesses to explain that his possession of the $3,000 in cash was the result of a recent tax refund. No evidence was proffered at the motion for new trial hearing that Howren had, in fact, received a tax refund.

---

[13] *Roberson v. Ocwen Fed. Bank*, 250 Ga. App. 350, 352 (2) (553 SE2d 162) (2001).

[14] See *Habersham v. State*, 190 Ga. App. 211, 212 (1) (378 SE2d 489) (1989).

[15] See *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).

Without such evidence, it is not possible to say that the witness's testimony would have been favorable to Howren and likely to create a different outcome in the trial.[16]

None of these purported errors supports a finding that the trial court erred in denying the ineffective assistance claim.[17]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 13, 2004 —
RECONSIDERATION DENIED DECEMBER 15, 2004 —

*Rodney L. Mathis*, for appellant.
Jerry M. Howren, Jr., *pro se.*
*T. Joseph Campbell, District Attorney*, for appellee.

---

[16] See *Baker*, supra, 259 Ga. App. at 436 (3) (a).
[17] See *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).
[1] See *Reece v. State*, 257 Ga. App. 137 (1) (570 SE2d 424) (2002).
[2] See id.