## A05A0010. CRAFT v. THE STATE.
### (618 SE2d 104)

PHIPPS, Judge.

Rodney Craft was tried by a jury and convicted of two counts of child molestation. He was sentenced to forty years, ten in confinement and thirty on probation. On appeal, he claims that the trial court erred in its questioning of two witnesses and in refusing to allow his trial counsel to introduce evidence of the victims' academic records. Craft also charges his trial counsel with ineffective assistance. We conclude that the trial court violated OCGA § 17-8-57 by its questioning of one witness. We further conclude that the statutory violation, coupled with the trial court's failure to allow Craft a thorough and sifting cross-examination, constituted plain error. Therefore, we reverse. Because the evidence was sufficient to support the verdict under the standard of *Jackson v. Virginia*,[1] the case can be retried.[2]

The evidence showed that C. W. and T. J., both 15 years old, were walking to school in Columbus on August 26, 2002. As they walked by Craft's house, Craft said to C. W., "Hey, look over here." C. W. looked in that direction and saw Craft standing naked at his door, masturbating. C. W. told T. J. to look, and T. J. also saw Craft naked and masturbating. They ran the rest of the way to school and reported the incident to the assistant principal, Senobia Moore. After investigation by Columbus police officers, Craft was arrested.

1. Craft claims that the trial court erred by asking Moore questions about the character of the victims in such a manner as to

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

cause the jury to believe that the court had formed or expressed an opinion about the veracity of the victims, in violation of OCGA § 17-8-57.

The following exchange is at issue:

> THE COURT: Ms. Moore, I just have a couple of questions for you. Do you know what kind of students these two girls are?
> THE WITNESS: Yes. They are very good students. Actually, one is a cheerleader[3] and they are very mannerable, very poli[t]e young ladies. And, again, knowing that they are not ones that are real wild and real, you know, loud in the halls and everything, the way that I saw them that day, you know, caused my attention to go to them.
> THE COURT: Are the cheerleaders at [your school] required to make a certain grade-point average?
> THE WITNESS: Yes, well, we follow the State, the code that goes with athletes, and if you —
> THE COURT: So that's the same requirement?
> THE WITNESS: Yes, it is. And if you fail two classes, you cannot participate. So it's the fail-no-participate rule. However, our students are still monitored. All of our athletes are monitored; and if their grades begin to fall low, they can be pulled from a game or pulled from participating for a period of time.
> THE COURT: Based on the individual school policy?
> THE WITNESS: Yes.

Craft did not object to the court's questioning during trial and has therefore waived his right to pursue the issue on appeal.[4] Despite counsel's failure to preserve this issue, we must consider whether the trial court's actions violated OCGA § 17-8-57 and, if so, whether that violation constituted plain error.[5]

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[6] The purpose of this limitation at least in part is to prevent the jury from being influenced by any disclosure of the judge's opinion regarding a witness's credibility.[7]

---

[3] Both victims testified that they were cheerleaders.

[4] See *Putman v. State*, 270 Ga. App. 45, 46 (4) (606 SE2d 50) (2004).

[5] See *Paul v. State*, 272 Ga. 845, 848-849 (3) (537 SE2d 58) (2000); *Seidenfaden v. State*, 249 Ga. App. 314, 318 (2) (547 SE2d 578) (2001).

[6] OCGA § 17-8-57.

[7] *O'Hara v. State*, 241 Ga. App. 855, 859 (3) (528 SE2d 296) (2000).

"The credibility and standing of the witness is an issuable fact in every case — a most material fact. Therefore, anything which tends to uphold, to support, to disparage, or to lower the character and the resulting credibility of the witness is vitally connected with the facts of the case."[8] This case was based almost entirely on the testimony of the victims. As a result, their credibility was the most important issue in the case.

The testimony elicited by the trial court bolstered the credibility of the victims, which had not previously been challenged. By its actions, the court stepped over the line between developing the truth of the case and intimating its opinion on an issue that was in the sole province of the jury, thereby violating OCGA § 17-8-57.[9]

Focused on what it calls the court's "leeway" in posing questions during a criminal trial, the dissent misses the point. We do not challenge the trial court's right to "occasional and cautious" questioning of witnesses to develop the truth of a case. Instead, we hold that the specific questioning in this case constituted a violation of OCGA § 17-8-57. Contrary to the dissent's argument, we are not breaking new ground or establishing a new rule in holding that a trial court violates OCGA § 17-8-57 when it intimates its opinion as to the credibility of a witness — an issue within the sole province of the jury.[10] We are merely applying existing case law to the specific facts of this case — a task performed daily by judges at the trial and appellate levels.

We do not conclude that the trial court's improper questioning, standing alone, constituted plain error. Instead, we consider the issue of plain error in connection with Craft's next claim.

2. After the court asked Moore questions about the victims' school performance, Craft sought to question her about their academic history and disciplinary history. Craft asked Moore what kind of student C. W. was, Moore admitted that even polite students get into minor trouble and, at Craft's request, Moore explained "administrative detention." The state objected to the line of questioning at that point. Craft's counsel responded that he had documents that contradicted some of Moore's testimony about the victims' school performance and conduct. The court refused to allow Craft to pursue the matter further, stating "you're not going to make these victims look bad." Although this statement was made during a bench conference,

---

[8] *Jones v. State*, 189 Ga. App. 232, 233 (1) (375 SE2d 648) (1988) (citation and punctuation omitted).

[9] See id.

[10] See id.; see also *Starr v. State*, 269 Ga. App. 466, 468 (1) (604 SE2d 297) (2004) (OCGA § 17-8-57 violated when trial court gave jury instruction that expressed an opinion, at least impliedly, as to the veracity of the child molestation victim).

it demonstrated that the trial court had reached the conclusion that the state had already proven that the girls were victims. Further, that conclusion likely formed the basis for the trial court's decision to shut down Craft's cross-examination. Craft claims that the trial court's refusal to allow further cross-examination constituted an abuse of the court's discretion.

As noted previously, the testimony elicited by the trial court bolstered the credibility of the victims, which had not previously been challenged. After opening the door to this line of questioning and allowing Moore to testify that the victims were very good students who were well-behaved, the trial court refused to allow Craft to rebut this testimony. Craft had documents showing that C. W. had been disciplined for disrespect and had been placed in administrative detention on two occasions, along with one showing that T. J. had been cited for screaming in the hallway and subjected to in-school suspension. Other documents showed that both victims had failed at least two classes.

The dissent argues that it was sufficient to allow Craft to ask four questions that "inferred to the jury that the two students fell short of perfection." But the limited questioning allowed by the court clearly was not adequate to rebut the critical testimony the court had elicited and did not provide Craft the thorough and sifting cross-examination to which he was entitled.[11]

> The right of cross examination is a substantial right, the preservation of which is essential to the proper administration of justice and extends to all matters within the knowledge of the witness, the disclosure of which is material to the controversy. This right should not be abridged.[12]

Here, not only did the court refuse to allow Craft further questioning of the witness; it refused to allow Craft to introduce the documentary evidence that would have specifically rebutted Moore's testimony regarding the behavior and academic standing of the victims.

We conclude that the trial court's improper bolstering of the victims' credibility, compounded by its refusal to allow Craft to rebut this critical testimony, "seriously affected the fairness, integrity, and public reputation of these judicial proceedings."[13] Therefore, we reverse Craft's conviction.[14]

---

[11] See OCGA § 24-9-64.

[12] *James v. State*, 260 Ga. App. 536, 536-537 (1) (580 SE2d 334) (2003) (citation omitted).

[13] *Paul*, 272 Ga. at 849 (3) (citation and punctuation omitted).

[14] See id.

We disagree with the dissent's implication that the focus should be on the number of questions asked by the trial court instead of the impact of those questions on the judicial proceedings. The dissent also seems to misunderstand our ultimate conclusion — when the trial court's improper questioning *was compounded with* the court's refusal to allow Craft to rebut the testimony the court had elicited, it "seriously affected the fairness, integrity, and public reputation" of the judicial proceedings.

3. Because it is possible that the situation could occur on retrial, we address Craft's claim that the trial court erred when it asked T. J. the following:

> THE COURT: Did you have any trouble seeing through the screen door on any of the occasions that you saw him standing behind the screen door?
> THE WITNESS: No, ma'am.
> THE COURT: Could you be mistaken about what he was doing?
> THE WITNESS: No, ma'am.
> THE COURT: On any of the times that you saw him?
> THE WITNESS: No, ma'am.

Craft argues that the questioning bolstered T. J.'s credibility and revealed a clear bias toward the prosecution, in violation of OCGA § 17-8-57.

During direct examination by the state, T. J. testified that she had seen Craft in his boxer shorts on August 19, while she was walking to school. She testified that when she saw him on August 26, he was standing behind a screen door and a light was on behind him. On cross-examination, Craft's counsel asked T. J. numerous questions about what she could and could not see through Craft's screen door.

Because Craft raised no objection to the questioning, he waived his right to assert the issue on appeal.[15] Even if Craft had objected, we find that no error occurred because the trial court merely sought to clarify T. J.'s testimony.[16] The trial court may propound questions to any witness to develop the truth of the case.[17]

4. Craft's remaining claims are moot.

---

[15] See *Putman,* supra.

[16] See id. at 46-47; see also *Goodrum v. State,* 269 Ga. App. 397, 400 (1) (604 SE2d 251) (2004).

[17] *Eubanks v. State,* 240 Ga. 544, 547 (2) (242 SE2d 41) (1978); see also *Shields v. State,* 272 Ga. 32, 34-35 (5) (526 SE2d 845) (2000).

*Judgment reversed. Barnes, J., concurs. Ruffin, C. J., and Black-burn, P. J., concur specially. Andrews, P. J., Johnson, P. J., and Mikell, J., dissent.*

RUFFIN, Chief Judge, concurring specially.

Although I agree with the result reached by the majority, I cannot fully endorse the analysis employed with respect to Divisions 1 and 2. Thus, I am compelled to write separately.

At the outset, I must emphasize that I find the trial judge's line of questioning regarding the victims' credibility to be wholly inappropriate. It is axiomatic that judges are required to remain neutral.[18] "As both the Supreme Court of Georgia and this Court have recognized, it is always wiser, safer, better, and juster that trial judges should confine themselves exclusively to an enunciation of the law, leaving to counsel the duty of elucidating the facts, and to juries the finding of the truth in the evidence."[19] Here, the trial court stepped beyond the bounds of appropriate questioning for the purpose of developing the truth, and instead acted as an advocate for the State by bolstering its witnesses. Indeed, I can conceive of no other purpose for such questions other than to bolster credibility.

Nonetheless, I do not believe that this impropriety — standing alone — rises to the level of "plain error."[20] And the inquiry at the outset must necessarily be whether the trial court's violation of OCGA § 17-8-57 constitutes plain error.[21] Here, the court's questions established solely that the two girls were good students and that at least one was a cheerleader. Although this evidence certainly bolstered the girls' credibility, such bolstering does not constitute plain error; or "that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding."[22]

The true error lies with the trial court's refusal to allow a thorough and sifting cross-examination regarding the girls' academic performance. "Control of the nature and scope of cross-examination of a witness is a matter within the sound discretion of the trial court and

---

[18] See *Steele v. Atlanta Maternal-Fetal Medicine*, 271 Ga. App. 622, 628-629, n. 10 (610 SE2d 546) (2005).

[19] (Punctuation omitted.) Id. at 628, n. 10.

[20] The majority conflates the plain error analysis in Division 1 with Division 2, which involves Craft's right to thoroughly cross-examine witnesses. I find this conflation inappropriate, unnecessary, and confusing.

[21] See *Lockaby v. State*, 265 Ga. App. 527, 528 (1) (594 SE2d 729) (2004) ("Where a trial judge is alleged to have made a prejudicial remark during the course of the trial in violation of such Code section, absent plain error, an objection or motion for mistrial must be made in order to preserve the issue for appeal.").

[22] (Punctuation omitted.) *Smith v. State*, 265 Ga. App. 236, 239 (5) (593 SE2d 695) (2004).

will not be disturbed on appeal absent an abuse of that discretion."[23] Discretion, however, is not without limit. "Every party has a right to a thorough and sifting cross-examination of witnesses called against him."[24] "Among the permissible purposes of cross-examination is the attempt to bring out facts that might show that a witness's testimony is either unbelievable, biased, or partial to one party."[25]

Both this Court and the Supreme Court have held that a trial court may abuse its discretion when it curtails cross-examination of witnesses.[26] Here, Craft was entitled to fully cross-examine Moore on issues pertaining to the girls' credibility. This is particularly true given the trial court's improper bolstering of their testimony. The trial court's questions about the girls' academic performance and standing in school opened the door to additional inquiry into their school records, and Craft "was entitled to a thorough and sifting cross-examination on this issue."[27] Accordingly, the trial court abused its discretion in curtailing such questioning so that the girls would not "look bad."[28] Moreover, I cannot conclude that any error in this regard was harmless.[29] The case against Craft rested exclusively on the credibility of the two victims. Under these circumstances, Craft's ability to undermine the girls' credibility should not have been limited, and Craft's conviction should be reversed.

I am authorized to state that Presiding Judge Blackburn joins in this special concurrence.

MIKELL, Judge, dissenting.

I respectfully dissent because I do not believe that the trial court's questioning of the witness violated OCGA § 17-8-57. Moreover, even if it had, the violation fell far short of being "plain error."

1. Occasional and cautious questioning of witnesses by the trial judge has been a part of Georgia trial practice for almost 150 years.[30] It has proved to be a useful device for reaching the truth. As explained by our Supreme Court, "It is a court's right, and oftentimes its duty, to question a witness in order to develop fully the truth of a case."[31]

---

[23] (Punctuation omitted.) *Courrier v. State*, 270 Ga. App. 622, 623 (1) (607 SE2d 221) (2004).

[24] (Punctuation omitted.) Id. at 623 (1) (a).

[25] *Carswell v. State*, 268 Ga. 531, 534-535 (5) (491 SE2d 343) (1997).

[26] See id.; *Courrier*, supra.

[27] *Pye v. State*, 269 Ga. 779, 788 (17) (505 SE2d 4) (1998).

[28] See *Courrier*, supra.

[29] Compare id.

[30] The leading case is *Kelly v. State*, 19 Ga. 425 (1856) (Lumpkin, J.). Accord *Eubanks v. State*, 240 Ga. 544, 546-547 (2) (242 SE2d 41) (1978); *Thomas v. State*, 240 Ga. 393, 400 (3) (242 SE2d 1) (1977).

[31] (Citations omitted.) *Eagle v. State*, 264 Ga. 1, 3 (3) (440 SE2d 2) (1994).

For a court to do its duty, it must be given some leeway in questioning, especially when there is no objection or motion for a mistrial.

The court's leeway is constrained by its duty to remain neutral between the parties. Questions should be asked sparingly and as neutrally and dispassionately as possible.[32] Moreover, as explained in our early decision in *Nobles v. State*,[33] "[e]xtreme anxiety to develop the truth as to facts which, if proved, will be peculiarly beneficial to one of the parties in the case and correspondingly detrimental to the other[,] can easily be mistaken by the jury for a manifestation of the judge's conviction that one party rather than the other should prevail."[34]

The court's leeway in criminal trials is also limited by statute. OCGA § 17-8-57 provides that:

> It is error for any judge in any criminal case . . . to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below.[35]

The majority opinion argues that the trial judge violated the statute by improperly bolstering the testimony of the victims when she elicited favorable testimony about them from the assistant principal.

A trial judge's intervening in a trial to bolster the testimony of the witnesses for one side might be a lapse from neutrality. But not every lapse from neutrality is a violation of OCGA § 17-8-57. The statute is narrowly drafted. It prohibits a trial judge from doing any one of four things:

> (a) expressing his opinion as to what has or has not been proved;
> (b) intimating his opinion as to what has or has not been proved;
> (c) expressing his opinion as to the guilt of the accused; or
> (d) intimating his opinion as to the guilt of the accused.

---

[32] Questions to a defendant, when a defendant has elected to take the stand in a criminal case, require particular caution by the trial judge. See generally *Milner v. State*, 270 Ga. App. 80, 83 (1) (606 SE2d 91) (2004).

[33] 13 Ga. App. 710 (79 SE 861) (1913).

[34] (Citations omitted.) Id.

[35] OCGA § 17-8-57.

In the case at bar, the trial judge clearly did not do (a), (c), or (d). The appellant's argument seems to be that the trial court, by questioning the assistant principal about the witnesses' student activities and grade-point averages, violated (b) and intimated that the facts testified to by the students had been proved. But helping to prove facts and intimating that they have already been proven are different. The majority is breaking new ground by trying to shoehorn bolstering into a violation of OCGA § 17-8-57.

In none of the precedents cited by the majority was a conviction overturned because a trial judge elicited favorable testimony about a witness's background or character. In *Paul v. State*,[36] the trial judge cross-examined the defendant, the victim, several witnesses and "intimated that he gave . . . [the defendant's psychiatric defense] no credence whatsoever."[37] In *Seidenfaden v. State*,[38] the court did not express an opinion at all, but correctly explained the law to the jury.[39] In *O'Hara v. State*,[40] we found no violation of OCGA § 17-8-57 despite the court's calling two witnesses, questioning them and suggesting its "approval" of one of them.[41]

The majority correctly asserts that the credibility and standing of the witnesses are critical issues in any trial. But the cases in which there were statutory violations involved lengthy questioning of witnesses or disparaging comments as distinguished from the limited questioning done by the trial judge in the case at bar.[42] The majority opinion establishes a new rule that questions by a trial judge which elicit testimony favorable to a witness are violations of OCGA § 17-8-57. Such a rule would handicap the trial court in doing its duty to question witnesses, albeit infrequently, carefully and neutrally, "in order to develop fully the truth of a case."[43]

2. Even if the court's questioning violated the statute, the violation fell far short of being "plain error." The plain error rule means that, in order to obtain appellate relief when no objection or motion for mistrial was made in the trial court, an appellant must show more than that an error occurred and that the outcome of the trial might have been different but for the error. It is not sufficient to show that

[36] 272 Ga. 845, 846-848 (1) (537 SE2d 58) (2000).
[37] Id. at 848 (1).
[38] 249 Ga. App. 314 (547 SE2d 578) (2001).
[39] Id. at 318 (2).
[40] 241 Ga. App. 855 (528 SE2d 296) (2000).
[41] Id. at 859 (3). In *Crane v. State*, 164 Ga. App. 638, 640 (1) (298 SE2d 619) (1982), the trial judge in the presence of the jury "in effect dared the appellant to take a polygraph test on the central issue of his guilt or innocence."
[42] *Jones v. State*, 189 Ga. App. 232, 233 (1) (375 SE2d 648) (1988); *Cole v. State*, 6 Ga. App. 798 (65 SE 839) (1909).
[43] *Eagle*, supra.

the error affected the fairness, integrity, or public reputation of the trial. Instead it must be shown that the error *"seriously* affected the fairness, integrity, and public reputation [of the trial]."[44]

Last year in *Milner v. State*, we held that a violation of OCGA § 17-8-57 was not plain error even though the trial judge had asked 14 penetrating questions of the defendant on cross-examination.[45] How can we now hold it to be plain error when a trial judge asks four fairly innocuous questions to a witness? The violation asserted in this case also contrasts starkly with the plain error found in *Paul v. State*, where the trial judge adopted a prosecutorial role throughout the trial.[46]

The majority is appropriately concerned that the trial judge, despite having "opened the door" to questions about the extracurricular activities, grade point averages, etc., of the victims, curtailed the efforts of defense counsel to elicit impeaching testimony. But the admission of evidence and the scope of cross-examination are largely within the discretion of the trial judge.[47] Because defense counsel was allowed to ask four questions, questions which inferred to the jury that the two students fell short of perfection,[48] the trial judge did not abuse her discretion in preventing defense counsel from exploring the matter as thoroughly as counsel wished to do.

3. I agree with the majority that the trial court's questions to the victim T. J. about what she could or could not see through the screen door were not violations of OCGA § 17-8-57.

I would affirm the judgment.

I am authorized to state that Presiding Judge Andrews and Presiding Judge Johnson join in this dissent.

DECIDED JULY 14, 2005 — ▮▮▮▮▮▮▮

*William J. Mason*, for appellant.
*J. Gray Conger, District Attorney, Robert H. Sandwich, Jr., Assistant District Attorney*, for appellee.

---

[44] (Emphasis supplied.) *Paul*, supra at 849 (3), citing *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986).

[45] *Milner*, supra at 83-84 (2). And a trial judge should be especially sparing and careful with questions to a defendant in a criminal case. Id. at 83 (1).

[46] *Paul*, supra.

[47] See *Mobley v. State*, 212 Ga. App. 293, 295 (1) (441 SE2d 780) (1994).

[48] E.g., "Q. Right. But sometimes polite students get in trouble. Is that correct? A. Minor trouble, maybe so."