A10A1208. SIMS v. THE STATE.
(701 SE2d 534)

POPE, Senior Appellate Judge.

Vinson Perez Sims appeals from the trial court's denial of his motion for new trial following his conviction for burglary. Sims challenges the sufficiency of the evidence and contends that the trial judge intimated his opinion as to Sims's guilt in violation of OCGA § 17-8-57 when he questioned a defense witness. For the reasons discussed below, we affirm.

Following a criminal conviction, we construe the evidence in the light most favorable to the jury's verdict. *Green v. State*, 298 Ga. App. 17, 18 (679 SE2d 348) (2009). Construed in this manner, the evidence showed that in the evening hours of October 12, 2008, three men broke into an apartment in Coweta County and stole electronic equipment, including a flat screen television, in addition to other items. They drove away in a silver-colored Volkswagen Passat and went to a nearby apartment complex where they divided up the stolen merchandise between them. Two of the men, Christopher Copson and Angelo Render, were subsequently apprehended, agreed to speak with the police after being advised of their *Miranda* rights,[1] and confessed to their involvement in the burglary. Copson told the interviewing detective that a third male participated in the robbery, and Render expressly identified defendant Sims by name as the third participant.

During the course of the police investigation, the detective

---

[1] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

traced the silver car to Render's sister. She owned the car and lived in the apartment complex where the three men fled after the burglary. Render's sister gave the police consent to search her car, and they discovered some of the stolen merchandise in the trunk.

Copson, Render, and Sims were jointly indicted for the burglary. Both Copson and Render pled guilty to the crime and testified against Sims at his jury trial, implicating him as a participant in the burglary. Render further testified that when the three men divided up the stolen merchandise after the burglary, Sims kept the flat screen television.

Also testifying at Sims's trial were the burglary victim, the police detective assigned to the case, and Render's sister. The victim testified that while he did not know Render or Sims, he knew Copson, who had stayed at his apartment for a short period of time but ultimately had been kicked out. According to the victim, Copson had called him on his cell phone twice on the day of the burglary, once in the morning and again around 2:00 p.m. During the course of their second telephone conversation, Copson had asked the victim when he would be getting home from work that day. The victim had informed Copson that he would not be returning to his apartment until after midnight.

The police detective testified regarding his investigation of the burglary, including his interviews of Copson and Render. The detective also testified about his recovery of the victim's stolen merchandise from the silver car owned by Render's sister.

Lastly, Render's sister testified that she had allowed her brother to borrow her car on the day of the burglary after he said that he needed to run to the store with Copson and Sims. She further testified that later that evening, she saw the three men after they returned in the car and noticed Sims carrying off a flat screen television.

Sims's defense was that he was with his cousin at the time of the burglary, that Copson had falsely accused him in order to receive a reduced sentence, and that Render had falsely accused him because he was involved with Render's former girlfriend. While Sims chose not to testify, his cousin testified that he was visiting and drinking with Sims on the evening of the burglary.

After hearing the conflicting evidence, the jury found Sims guilty of the charged offense. Sims moved for a new trial, which the trial court denied. This appeal followed.

1. Sims maintains that there was insufficient evidence to support his conviction. He emphasizes that the only evidence directly implicating him in the crime was the testimony of his alleged accomplices, Copson and Render, who he claims gave contradictory testimony in several respects and were motivated to lie about his

involvement. We conclude that the evidence was sufficient.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another[.]" OCGA § 16-7-1 (a).

> [E]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. One is concerned in the commission of a crime where the person either directly commits, intentionally causes another to commit, intentionally aids or abets the commission of, or intentionally advises or otherwise encourages another to commit the crime.

(Punctuation and footnote omitted.) *Stevens v. State*, 245 Ga. App. 237, 241 (7) (537 SE2d 688) (2000). See OCGA § 16-2-20 (a), (b). A person's involvement in the commission of a crime "may be inferred from that person's presence, companionship, and conduct before, during and after the crime." *Marshall v. State*, 275 Ga. 740, 742 (4) (571 SE2d 761) (2002).

In the present case, both of Sims's accomplices, Copson and Render, testified that Sims directly participated in breaking into the apartment and stealing the flat screen television and other items. Additionally, Render's sister testified that she allowed Sims and his two accomplices to use her car on the day of the burglary, and the police detective testified that shortly thereafter he recovered items stolen from the apartment in the car's trunk. Render's sister also testified that she saw Sims on the evening of the burglary carrying off a flat screen television after he and his accomplices had returned in her car. This combined testimony was sufficient to authorize a rational jury to find Sims guilty of the charged offense beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also OCGA § 16-7-1 (a); *Dyer v. State*, 298 Ga. App. 327, 329 (1) (680 SE2d 177) (2009).

It is true that a conviction cannot be sustained solely based upon the uncorroborated testimony of an accomplice. See OCGA § 24-4-8. But,

> corroboration requires only slight evidence from an extraneous source identifying the accused as a participant in the criminal act. Corroborative evidence may be circumstantial and based on the testimony of other accomplices. And it does not have to be sufficient to warrant a conviction. Rather, the corroboration, which may include the defen-

dant's conduct before and after the crime, need only connect and identify the defendant with the crime.

(Punctuation and footnotes omitted.) *Clark v. State*, 294 Ga. App. 331, 333 (670 SE2d 131) (2008). The testimony of Render's sister regarding the flat screen television sufficed as slight evidence identifying Sims as a participant in the burglary, and the testimony of each accomplice regarding Sims's involvement sufficiently corroborated the testimony of the other. See *Dyer*, 298 Ga. App. at 329 (1).

Finally, we reject Sims's contention that his conviction must be reversed because in his view the testimony of his two accomplices was contradictory and lacked credibility. "[D]etermining the credibility of witnesses is entirely within the province of the jury[,] and the jury obviously believed the testimony of [Sims's] accomplices." (Citation, punctuation and footnote omitted.) *Dyer*, 298 Ga. App. at 329 (1). See *Martinez v. State*, 303 Ga. App. 166, 170 (1) (692 SE2d 766) (2010) ("Resolution of conflicts in the testimony and the assessment of witness credibility [are] for the jury, not this Court.").

2. After defense counsel and the State had an opportunity to examine Sims's cousin, the trial judge asked questions aimed at clarifying when the cousin first learned of the burglary and when he came to remember that he had visited with Sims on the day of the burglary. Sims contends that the trial judge improperly intimated his opinion as to Sims's guilt when he questioned the cousin. We are unpersuaded.

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57. But while "a judge is prohibited from expressing or intimating his opinion as to what has or has not been proved, the trial judge does have the right to propound a question or a series of questions to any witness for the purpose of developing fully the truth of the case." (Citation and punctuation omitted.) *Calloway v. State*, 199 Ga. App. 272, 274-275 (7) (404 SE2d 811) (1991). In propounding questions to a witness to develop the truth or clarify an issue, the trial judge is permitted to ask leading questions. See *Barker v. State*, 191 Ga. App. 451, 453 (3) (382 SE2d 115) (1989). And the mere fact that the responses of the witness may be detrimental to the defendant is not cause in itself for granting a new trial. See *Fraser v. State*, 52 Ga. App. 92, 97 (182 SE 418) (1935). Furthermore, "[t]he extent to which the examination conducted by the court shall go is a matter within the court's discretion." (Citation and punctuation omitted.)

*Calloway*, 199 Ga. App. at 275 (7).[2]

We discern no abuse of discretion in this case. The questions posed by the trial judge were aimed at clarifying the cousin's testimony and were not an expression or intimation regarding the evidence or the guilt of Sims. Moreover, to the extent that Sims's claim of error is predicated on the alleged tone of voice or demeanor of the trial judge in questioning the cousin, his claim is not reviewable because he failed to develop a record that would enable appellate review of the issue. See *Milhouse v. State*, 254 Ga. 357, 359 (2) (329 SE2d 490) (1985); *Goodrum v. State*, 269 Ga. App. 397, 400 (1) (604 SE2d 251) (2004). Compare *Johnson v. State*, 278 Ga. 344, 346-347 (3) (602 SE2d 623) (2004) (trial judge's tone and demeanor were subject to appellate review where defendant perfected the record by obtaining the testimony of a witness who was in the courtroom at the time of the alleged incident). Under these circumstances, we cannot say that the trial judge violated OCGA § 17-8-57 in questioning Sims's cousin. See *Goodrum*, 269 Ga. App. at 399-400 (1); *Jackson v. State*, 251 Ga. App. 171, 172-173 (1) (554 SE2d 202) (2001); *Barker*, 191 Ga. App. at 452-453 (3).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED SEPTEMBER 14, 2010.

*Jamie T. Roberts*, for appellant.

*Peter J. Skandalakis, District Attorney, Andrea A. Newton, Assistant District Attorney*, for appellee.

---

[2] Although Sims did not timely object to the questioning of his cousin by the trial judge, the failure to object at trial does not waive appellate review of this issue. See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010). In this context, the sole issue on appeal is whether the trial judge violated OCGA § 17-8-57; if the answer is yes, a new trial is required because such a violation is not subject to harmless error analysis. See id.; *Sauerwein v. State*, 280 Ga. 438, 439 (2) (629 SE2d 235) (2006).