305 Ga. 421
FINAL COPY

S18A1052.  YARN v. THE STATE.

WARREN, Justice.

Deondray Yarn was convicted of murder and other crimes in connection with the January 2014 shooting death of Monnie Brabham.  On appeal, Yarn contends that the evidence was insufficient to support his convictions, that the trial court abused its discretion in granting continuances over Yarn's objections, and that his trial counsel was ineffective in communicating a plea offer to Yarn.  Finding no error, we affirm.[1]

_____

[1] The murder was committed on January 23, 2014.  On September 15, 2015, a Houston County grand jury indicted Yarn for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault of Brabham (Count 3), aggravated assault of LaJerrius Barfield (Count 4), armed robbery of Brabham (Count 5), violation of the Street Gang Terrorism and Prevention Act (Count 6), and possession of a firearm during the commission of a felony (Count 7).  At the conclusion of a trial held from May 16-18, 2017, a jury found Yarn guilty of all counts.  On May 26, 2017, the trial court sentenced Yarn to life with the possibility of parole for malice murder (Count 1); 20 years for aggravated assault of Barfield (Count 4), consecutive to Count 1; 20 years for armed robbery of Brabham (Count 5), consecutive to Count 4; 15 years for the Gang Act violation (Count 6), concurrent with Counts 4 and 5; and five years for firearm possession (Count 7), consecutive to Count 5.  Count 2 was vacated by operation of law, and Count 3 was merged for sentencing purposes.  Yarn filed a timely motion for new trial on May 31, 2017, which was later amended through new counsel.  Following a hearing, the trial court denied the motion, as amended, on January 8, 2018.  Yarn filed a notice of appeal on February 2,

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed that Deondray Yarn, Clifton Roberts, Michael Gooden, Dewayne Seymore, and Ameshia Cosby were members of One-Eight-Trey, a gang affiliated with the Bloods gang. In January 2014, One-Eight-Trey's leader, Kevin Melton, ordered the five members to kidnap LaJerrius Barfield. Barfield had previously been a member of One-Eight-Trey but had defected to start a rival gang, prompting Melton to seek revenge.

On January 23, 2014, the group drove from Atlanta to Houston County to the house of Tianna Maynard, a highly ranked One-Eight-Trey member. Roberts and Gooden had firearms — a pistol and shotgun, respectively. Maynard had contacted Barfield and arranged for him to come to her home as a pretext for the kidnapping. Barfield, unaware of the group's scheme, asked Monnie Brabham to drive him to Maynard's house in Warner Robins. When the group of five was at Maynard's house, they saw Barfield and Brabham arrive and then leave without exiting Brabham's car.

With Roberts driving, the rest of the group followed Barfield and Brabham. They stopped their vehicle behind Brabham's at a gas station where

2018, through a second new attorney and filed an amended notice of appeal on February 7, 2018. The appeal was docketed to the August 2018 term of this Court and submitted for a decision on the briefs.

Brabham had gotten out to pump gas. Yarn and Gooden then stepped out of their car, both armed — Yarn with Roberts's handgun, and Gooden with his own shotgun. Gooden approached Brabham, who reached for the shotgun, and they struggled for the weapon until Gooden shot Brabham, who died soon thereafter. Barfield started running away, and Yarn fired at him. Barfield fell at one point but managed to escape. The incident was captured on the gas station's surveillance video and was witnessed by others at the scene.

After the shooting, Yarn and Gooden got into Brabham's car and drove it back to Maynard's house. The group searched the car, removing phones that they eventually sold, before abandoning it. They then returned to Atlanta together. On the ride back to Atlanta, Roberts spoke with Melton on the phone and told him what happened. After the shooting, the gang ranks of the five individuals who went to Houston County increased.

2. Yarn asserts that the evidence was insufficient to support his convictions for malice murder, aggravated assault, gang activity, and possession of a firearm.[2] Specifically, he asserts that the testimony of

---

[2] Yarn also challenges the sufficiency of the evidence for the felony murder count. But because that count was vacated, he was not sentenced for it and his claim is moot. See *Chavers v. State*, 304 Ga. 887 (823 SE2d 283) (2019). Yarn apparently does not challenge the sufficiency of the evidence for his armed robbery conviction, but our independent

accomplices who testified against him was, at times, contradictory, and that confidence in the jury's guilty verdict was therefore so eroded that a new trial must be granted. Because the evidence was sufficient to support each of these convictions, and because resolving contradictions in testimony is reserved for the jury, this enumeration fails.

When evaluating a challenge to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979). Our review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence. See id.; *Menzies v. State*, 304 Ga. 156, 160 (816 SE2d 638) (2018). "'As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.'" *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010) (citation and punctuation omitted).

review confirms that there was sufficient evidence to support that conviction. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

The testimony of an accomplice must be corroborated to sustain a felony conviction. OCGA § 24-14-8; *Bradshaw v. State*, 296 Ga. 650, 653 (769 SE2d 892) (2015).[3] "'[S]ufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged.'" *Bradshaw*, 296 Ga. at 654 (quoting *Threatt v. State*, 293 Ga. 549, 551 (748 SE2d 400) (2013)). That said, the corroborating evidence must be "'independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.'" Id. at 655 (quoting *Threatt*, 293 Ga. at 551). Moreover, the testimony of one accomplice can be corroborated by the testimony of another accomplice. *Huff v. State*, 300 Ga. 807, 809 (796 SE2d 688) (2017) (citing *Herbert v. State*, 288 Ga. 843, 844 (708 SE2d 260) (2011)).

Here, there was ample evidence to support Yarn's convictions, and Yarn's argument that alleged contradictions between Gooden's and Roberts's testimony undermine the sufficiency of the evidence is without merit. As we

---

[3] OCGA § 24-14-8 was previously codified as OCGA § 24-4-8 in the old Evidence Code and has the same meaning under the new Evidence Code. *Bradshaw*, 296 Ga. at 654.

have said, our review "leaves to the jury the resolution of conflicts in the testimony, the weight of the evidence, the credibility of witnesses, and reasonable inferences" to be made from the evidence. See *Menzies*, 304 Ga. at 160.[4] Additionally, there was evidence sufficient to corroborate the accomplice testimony presented at trial and to support the jury's guilty verdicts. Roberts and Gooden both testified that they and Yarn were members of One-Eight-Trey. They also both testified that Melton was the gang's leader; that Melton directed them to kidnap Barfield; that Roberts, Gooden, Yarn, and the rest of the group traveled to Maynard's house to do so; that they followed Barfield to the gas station; that Gooden and Yarn exited the vehicle with firearms and approached the victims; that Gooden and Brabham struggled over Gooden's gun, resulting in Brabham being fatally shot; that Yarn shot at Barfield; and that the gang ranks of the members involved in the shooting increased after the shooting.

---

[4] Yarn cites *Burns v. State*, 342 Ga. App. 379, 386 (803 SE2d 79) (2017), to support his contention that a new trial should be granted because of the contradiction in accomplice testimony. But that case, which involved an ineffective assistance of counsel claim based on counsel's failure to object to a jury charge that accomplice testimony did not need corroboration, is inapposite. Id. at 384. Yarn also cites *Sims v. State*, 306 Ga. App. 68 (701 SE2d 534) (2010), but that case plainly rejects the argument he now makes. See id. at 71 ("[W]e reject Sims's contention that his conviction must be reversed because in his view the testimony of his two accomplices was contradictory and lacked credibility. Determining the credibility of witnesses is entirely within the province of the jury . . . .") (citations and punctuation omitted).

Not only was each accomplice's testimony corroborated by the other, video evidence from the gas station, testimony of other witnesses to the shooting, Barfield's testimony, and ballistics evidence also corroborated Gooden's and Roberts's testimony. That evidence is more than sufficient to sustain Yarn's convictions. See *Powell v. State*, 291 Ga. 743, 745 (733 SE2d 294) (2012) ("[T]he evidence shows . . . a common enterprise at the time of the shooting, that [the defendant] was in the car at the time of the shooting but failed to summon any help for [the victim], and that [the defendant] and [the accomplice] stood together at the front of the car after the shooting, ran off together, and eventually made their ways to the same place.").

3.     Yarn also contends that the trial court abused its discretion in granting, over Yarn's objections, three continuances that the State sought before trial.[5] The record shows that the State sought the continuances because material evidence and three material witnesses for Yarn's trial — Seymore, Gooden, and Roberts — were in federal custody for Melton's trial in North Carolina.[6] The State represented that the three witnesses would testify to being

---

[5] The motions were filed on May 17, 2016, August 23, 2016, and January 20, 2017.

[6] At the time of Brabham's murder, Melton was in federal custody for unrelated charges in North Carolina. Both Gooden and Roberts testified in Melton's and Yarn's trials as part of a negotiated plea agreement. Also, some of the evidence used in Yarn's

in Roberts's vehicle or participating in the shooting at the gas station and that

Yarn fired shots at Barfield. "'[W]hether to grant a motion for continuance is

entirely within the sound discretion of the trial court and will not be disturbed

absent a clear abuse of discretion.'" *Morris v. State*, 303 Ga. 192, 194 (811

SE2d 321) (2018) (quoting *Carter v. State*, 285 Ga. 394, 398 (677 SE2d 71)

(2009)).

Yarn's argument relies on OCGA § 17-8-25,[7] which requires

applications for continuances based on witness absence to show, among other

things, that the witness has been subpoenaed. Because the absent witnesses in

his case had not been subpoenaed, Yarn contends that the trial court should

have denied the continuances for failure to meet the requirements of OCGA

§ 17-8-25. But Yarn fails to cite any authority to support this assertion, and

---

case had been in the possession of federal authorities for use in Melton's trial. Seymore ultimately did not testify at Yarn's trial.

[7] OCGA § 17-8-25 provides:
    In all applications for continuances upon the ground of the absence of a witness, it shall be shown to the court that the witness is absent; that he has been subpoenaed; that he does not reside more than 100 miles from the place of trial by the nearest practical route; that his testimony is material; that the witness is not absent by the permission, directly or indirectly, of the applicant; that the applicant expects he will be able to procure the testimony of the witness at the next term of the court; that the application is not made for the purpose of delay but to enable the applicant to procure the testimony of the absent witness; and the application must state the facts expected to be proved by the absent witness.

we previously have rejected the very same argument. See *Parker v. State*, 282 Ga. 897, 899 (655 SE2d 582) (2008) (noting that "a trial court does not abuse its discretion as a matter of law in granting a continuance in the absence of a subpoena") (quoting *Carraway v. State*, 263 Ga. App. 151, 153 (587 SE2d 152) (2003)) (punctuation omitted). Moreover, OCGA § 17-8-33 (a) — which was argued below and on which the trial court relied in its order denying Yarn's motion for new trial — "authorizes a court to grant a continuance whenever required by 'the absence of a material witness *or the principles of justice*.'" *Parker*, 282 Ga. at 898 (quoting *Dowd v. State*, 280 Ga. App. 563, 564 (634 SE2d 509) (2006)) (emphasis in original). Given our case law interpreting OCGA § 17-8-25, and the broad latitude trial courts have to grant continuances under OCGA § 17-8-33 (a), we cannot say that the trial court abused its discretion here. See *Parker*, 282 Ga. at 898-899. This enumeration of error, therefore, fails.

4.     Yarn argues that his trial counsel was ineffective for failing to inform him fully of the sentencing consequences of rejecting a plea offer made by the State, and, in particular, for failing to inform Yarn of the differences between consecutive and concurrent sentences. Because Yarn has failed to

establish that he was prejudiced by counsel's alleged deficiency, this enumeration of error fails.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the

*Strickland* test, the reviewing court does not have to examine the other prong."

*Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

The right to effective assistance of counsel and the *Strickland* analysis extend to the plea-bargain process. *Missouri v. Frye*, 566 U. S. 134, 140 (132 SCt 1399, 182 LE2d 379) (2012); *Lafler v. Cooper*, 566 U. S. 156, 162 (132 SCt 1376, 182 LE2d 398) (2012); see also *Gramiak v. Beasley*, 304 Ga. 512, 514 (820 SE2d 50) (2018) ("A defendant is entitled to be fully informed of certain consequences of his decision to accept or reject a plea offer, including the right to the informed legal advice of counsel regarding the possible sentences that could be imposed following a conviction at trial."). A defendant claiming ineffective assistance based on rejecting a plea offer because of counsel's deficient advice must establish prejudice by showing: (1) that "'but for the ineffective advice of counsel[,] there is a reasonable probability that the plea offer would have been presented to the court,'" meaning that "'the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances'"; (2) that the trial court would have accepted the terms of the negotiated plea; and (3) "'that the conviction or sentence, or both, under the offer's terms would have been less

severe than under the judgment and sentence that in fact were imposed.'"
*Gramiak*, 304 Ga. at 515 (quoting *Lafler*, 566 U. S. at 164).

Here, the record shows that Yarn and both of his trial counsel testified at his motion for new trial hearing. That testimony confirms that at some point before trial, Yarn's counsel communicated to Yarn a plea offer from the State: plead guilty and receive "life with parole." Other record evidence shows that Yarn was advised that under the plea deal, he would plead guilty to one count of murder and the gang count and be sentenced to life for the murder conviction with 15 years consecutive for the gang conviction.[8] Yarn also conceded that counsel told him that he could be sentenced to life *without* parole if he went to trial, and the two counsel likewise testified that they discussed with Yarn the potential sentences Yarn could receive if he went to trial. Trial counsel further testified that their standard practice was to discuss the difference between consecutive and concurrent sentences, though they did not specifically remember if they had done so in this case. Before trial, the court also advised

---

[8] We note that in *Lloyd v. State*, 258 Ga. 645 (373 SE2d 1) (1988), on which Yarn relies in support of his ineffectiveness claim, it was undisputed that counsel never even communicated the State's plea offer to the defendant. Id. at 646. That case is therefore inapposite.

Yarn of the maximum possible sentence for each count. Yarn rejected the State's offer and proceeded to trial.

Pretermitting whether counsel performed deficiently here, Yarn has not satisfied the *Lafler* test for prejudice because he has failed to show that he would have accepted the plea offer but for his counsel's allegedly deficient advice. The United States Supreme Court and this Court have both emphasized the need for case-by-case analysis to determine whether record evidence shows prejudice — here, that a defendant would have accepted the State's plea offer — and advised courts to "look to contemporaneous evidence to substantiate a defendant's post hoc assertion[s]" that he would have chosen differently had counsel performed adequately. See *Gramiak*, 304 Ga. at 516-517; see also *Lee v. United States*, 582 U. S. ___, ___ (137 SCt 1958, 1967, 198 LE2d 476) (2017). The record is devoid of such evidence here.

Yarn has not shown that he would have accepted the State's plea offer, even assuming it had been explained to him adequately. He never testified or offered other direct evidence at the motion for new trial hearing that he would have accepted the plea offer — with or without a full explanation of the differences between consecutive and concurrent sentences; rather, he makes this assertion for the first time on appeal. See *Gramiak*, 304 Ga. at 516

("Arguments . . . made in court briefs, however, do not constitute record evidence to support a finding of fact."). Moreover, the three reasons Yarn offers to support the "inference" that he would have accepted the plea offer if counsel had explained it better — that Yarn had an eleventh-grade education and therefore did not understand the offer as initially explained; that his accomplices accepted plea deals; and that the sentence Yarn received at trial is longer than that in the plea offer — do not amount to evidence that Yarn would have accepted the State's offer. Because there is no record evidence that Yarn would have accepted the plea offer had he been told the difference between consecutive and concurrent sentences — and especially considering that Yarn conceded at his motion for new trial hearing that he was advised that going to trial risked a sentence of life without the possibility of parole, he has failed to show prejudice under *Strickland* and *Lafler*, and his claim of ineffective assistance of counsel fails. Cf. *Walker v. State*, 341 Ga. App. 742, 746 (801 SE2d 621) (2017) (remanding for finding on prejudice when defendant rejected a 20-year plea offer only before learning that life imprisonment was the maximum possible sentence); *State v. Lexie*, 331 Ga. App. 400, 403-404 (771 SE2d 97) (2015) (finding prejudice when record showed, through testimony

from defendant and trial counsel and a letter written at the time by defendant, that defendant wanted to accept plea offer but was dissuaded by trial counsel).

Because this enumeration of error also fails, Yarn's convictions are affirmed.

Judgment affirmed. All the Justices concur.

Decided March 11, 2019.

Murder. Houston Superior Court. Before Judge Adams.

Clifford Carlson, for appellant.

George H. Hartwig III, District Attorney, Daniel P. Bibler, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.