**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 3, 2020**

# In the Court of Appeals of Georgia

A20A1496. McNEELY v. THE STATE.

BARNES, Presiding Judge.

In this case arising out of a shooting that occurred during a drug deal, Antwan Dominique McNeely was convicted of aggravated assault and possession of a firearm during the commission of a crime. On appeal from the denial of his motion for new trial, McNeely contends that he received ineffective assistance from his trial counsel. Specifically, McNeely argues that his trial counsel was deficient in failing to review certain video surveillance footage before trial, and that, if his counsel had reviewed the footage and advised him about it, he would have accepted a plea offer made by the State instead of proceeding to trial. For the reasons discussed more fully below, we conclude that the trial court did not err in denying McNeely's motion for new trial on the ground that his counsel was ineffective. Accordingly, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). So viewed, the evidence showed that on the night of May 1, 2014, the victim drove to a hotel in Richmond County, Georgia, to sell an ounce of methamphetamine. The victim arranged the drug deal through a friend, who met him in the hotel room along with the buyer.[1] The buyer went by the nickname Smiley. After the victim weighed the methamphetamine, Smiley pulled out a handgun and pointed it at the victim. When the victim refused to hand over the drugs, Smiley fired a shot through the floor and another into the wall before leaving the hotel room.

The victim left the hotel room a few minutes later and got into his truck in the hotel parking lot. An SUV then pulled up beside the victim's truck and someone got out, unsuccessfully tried to open the truck's doors, and fired two shots into the truck before jumping back into the SUV. One of the bullets struck the victim in the leg. The victim rammed the SUV with his truck, and then both vehicles drove away. The victim subsequently was transported by ambulance to the hospital for treatment.

---

[1] A fourth person, who went by the nickname T. J., also was in the hotel room.

2

When the victim initially spoke with a police investigator, he tried to cover up the fact that the shooting occurred during a drug transaction. However, the victim later admitted to the investigator that the shooting occurred in the context of a drug deal at the hotel, and he identified McNeely in a photographic lineup as Smiley, the buyer who fired the shots in the hotel room. The victim also identified McNeely as Smiley later at trial. The victim did not see the face of the person who fired into his truck in the parking lot.

The victim's friend who had been present during the drug deal also spoke with an investigator and told him about what transpired at the hotel. He identified McNeely as Smiley in a photographic lineup and later at trial. The victim's friend, who had been standing on the hotel balcony when the shooting occurred in the parking lot, told the investigator that he saw McNeely fire the shots into the victim's truck.

The morning after the shooting, McNeely's girlfriend discovered that the front of her SUV was damaged. McNeely told her that he had been driving the SUV and damaged it when he swerved to miss a child. Suspicious of McNeely's story, the girlfriend spoke with a law enforcement officer and told him that McNeely had been in possession of her SUV when the damage occurred. She also told the investigator

3

that McNeely went by the nickname Smiley, and she handed over her damaged SUV to an investigator. The investigator had the victim's friend look at the damaged SUV, and the friend confirmed that it was the same SUV involved in the shooting.

The investigator contacted the hotel manager and learned that the hotel was equipped with a video surveillance system. He obtained a video from the hotel manager that included footage of the outside of the hotel room and the parking lot area on the night in question. The video was divided into two files. The images captured in the two video files were small and blurry but were consistent with the victim and his friend's descriptions of what had occurred. The first video file showed people going in and out of the hotel room in question, and the second video file showed people leaving the room followed by the shooting incident in the parking lot involving the truck and SUV. Although the shooter's face could not be seen in the second video file, the video showed the shooter wearing a white shirt, which was consistent with the description of McNeely's clothing given by the victim's friend. Additionally, when McNeely's girlfriend was shown the second video file, she identified her SUV as the vehicle in the video pulling up to the truck during the shooting.

McNeely was arrested, and officers discovered a Hi-Point handgun on the kitchen table in his apartment. A Georgia Bureau of Investigation ("GBI") expert in firearms analysis examined the handgun and several 9 millimeter cartridge cases recovered from the crime scene and determined that the cartridge cases had been fired from that gun.

Before trial, the prosecutor offered a plea deal to McNeely of five years in confinement followed by five years on probation. McNeely rejected the offer after discussing it with his trial counsel. McNeely made a counteroffer of 10 years, with the first 2 years in confinement followed by 8 years on probation, which the State did not accept. In letters written by McNeely to the prosecutor, he stated that the plea offered by the State involved a "harsh sentence," that he was innocent of the charges against him, that he was the victim and acted in self-defense, that there were "legitimate reasons for [him] to take this case to trial," and that he was "ready to get back home with [his] family."

At the ensuing jury trial, in addition to the testimony of the victim, the victim's friend, McNeely's girlfriend, the GBI firearms expert, and several law enforcement officers, the State introduced into evidence and played for the jury the two video surveillance files from the hotel. When the State played the second video file that

5

showed the shooting incident in the parking lot, McNeely's trial counsel passed him a note which read:

> We did not see the second file of the security video – I thought we had seen all there was to see. If you are convicted then you can raise that in a motion for new trial or appeal – You would get a different lawyer. I would be called as a witness.

The jury trial continued, and McNeely ultimately elected not to testify and did not call any defense witnesses. Following its deliberations, the jury found McNeely guilty of aggravated assault based on the shooting of the victim and of possession of a firearm during the commission of a crime.[2] The trial court entered judgment on the conviction and sentenced McNeely to 25 years, with the first 20 years in confinement followed by 5 years on probation.

McNeely filed a motion for new trial, contending, among other things, that his trial counsel was ineffective because he did not adequately prepare for trial by reviewing the second of the two surveillance video files from the hotel. According

---

[2] McNeely also was indicted on charges of criminal attempt to commit armed robbery and possession of a firearm by a convicted felon. He was acquitted of attempted armed robbery, and the firearm charge was nolle prossed.

to McNeely, if his trial counsel had reviewed the second video file before trial and discussed it with him, he would have accepted the plea deal offered by the State.

At the hearing on the motion for new trial, McNeely's trial counsel testified that the State provided him access to the two video files from the hotel's surveillance system before trial, but he had mistakenly only reviewed the first of the two video files and thus did not discuss with McNeely the second file showing the shooting incident in the hotel parking lot. According to trial counsel, had he been aware of the second video file, he would have advised his client to strongly consider accepting a plea deal. However, trial counsel also testified that McNeely previously had been found not guilty by the same trial judge in a bench trial in a different criminal case, that he and McNeely liked having the same judge in the present case, and that McNeely "was pretty strongly wanting to have a trial." According to trial counsel, he did not recall seeing any signs from McNeely that a guilty plea would be a possibility in this case. Additionally, the State introduced into evidence an email containing the State's plea offer of five years to serve, five years on probation, an email containing McNeely's counteroffer of two years to serve, eight years on probation, and McNeely's letters to the prosecutor in which he proclaimed his innocence and criticized the plea deal offered by the State. McNeely did not testify at the new trial

hearing. Following the hearing, the trial court entered its order rejecting McNeely's ineffective assistance claim and denying his motion for new trial. This appeal followed in which McNeely contends that his trial counsel rendered ineffective assistance and that the trial court erred in concluding otherwise.[3]

To succeed on a claim of ineffective assistance of counsel under the test enunciated in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), a defendant must show both that his lawyer's performance was deficient and that this deficient performance resulted in prejudice to the defendant. *Thomas v. State*, 303 Ga. 700, 702 (2) (814 SE2d 692) (2018). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010). "In addressing claims of ineffective assistance of counsel, we review the trial court's legal conclusions de novo and its factual findings under the clearly erroneous standard." *Ramirez v. State*, 345 Ga. App. 611, 618 (3) (814 SE2d 751) (2018).

---

[3] Although not enumerated as error, we conclude that the evidence recounted above was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that McNeely was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Pretermitting whether McNeely's trial counsel was deficient in failing to review the second of the two video files before trial and discuss it with him, we conclude that the trial court was authorized to determine that McNeely failed to establish that he was prejudiced by counsel's alleged deficiency.[4] McNeely does not argue on appeal that there is a reasonable probability that the result of his trial would have been different, but for his counsel's alleged deficiency in failing to review the second video file. Rather, he contends that but for his counsel's deficiency in failing to review the video and advise him about it in their discussions about the State's plea offer, he would have accepted the plea offer instead of proceeding with trial.

---

[4] McNeely also asserts that his trial counsel was deficient because he told the jury during his opening statement that McNeely acted in self-defense but then later failed to present any evidence to support such a defense. As an initial matter, neither opening statements nor closing arguments were transcribed, and thus it is unclear what counsel specifically asserted during his opening statement or what he later argued during closing argument. In any event, even if we were to assume that trial counsel was deficient in raising self-defense in his opening statement, McNeely has failed to show a reasonable probability that the outcome of his trial would have been different in the absence of the alleged deficiency. See *Williams v. State*, 292 Ga. 844, 849 (3) (b) (742 SE2d 445) (2013) (ineffective assistance claim failed, where defendant had "not shown a reasonable probability that the outcome of the trial would have been different if the lawyer had not made the misstatement in her opening statement"). "[T]he prejudicial effect, if any, resulting from the inconsistency between the evidence and the misstatement was mitigated by the trial court charging the jury that what the lawyers say in opening statement is not evidence but is ['merely [a] preview[ ] of what the lawyers reasonably expected the evidence to show']." (Punctuation omitted.) Id.

9

A defendant claiming ineffective assistance based on rejecting a plea offer because of counsel's deficient advice must establish prejudice by showing: (1) that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, meaning that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances; (2) that the trial court would have accepted the terms of the negotiated plea; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

(Citation and punctuation omitted.) *Yarn v. State*, 305 Ga. 421, 426-427 (4) (826 SE2d 1) (2019). See *Lafler v. Cooper*, 566 U.S. 156, 164 (II) (B) (132 S Ct 1376, 182 LE2d 398) (2012); *Gramiak v. Beasley*, 304 Ga. 512, 515 (I) (B) (820 SE2d 50) (2018). Thus, in the context of an ineffective assistance claim predicated on a rejected plea offer, the defendant can establish prejudice only if, among other things, he shows "that a reasonable likelihood exists that he would have accepted the plea offer but for trial counsel's deficient representation." *Gramiak*, 304 Ga. at 517 (I) (C). See *Lloyd v. State*, 258 Ga. 645, 648 (2) (b) (373 SE2d 1) (1988). And, we apply the clearly erroneous standard when reviewing a trial court's decision regarding whether to draw an inference that the defendant would have accepted the State's plea offer based on disputed or unclear evidence. See *Cleveland v. State*, 285 Ga. 142, 146-147 (674

SE2d 289) (2009). Applying that standard, we discern no error by the trial court in this case.

McNeely did not testify or offer any other direct evidence at the motion for new trial hearing that he would have ever accepted the State's offer of five years in confinement followed by five years on probation, had he been advised by counsel about the second video file. And, as previously discussed, there was testimony from McNeely's trial counsel at the new trial hearing reflecting that McNeely was pleased that the case had been assigned to the same trial judge who had previously acquitted him in a different case, that he strongly wanted to proceed to trial, and that there were no signs that McNeely ultimately would be willing to plead guilty. Furthermore, in McNeely's letters to the prosecutor admitted into evidence at the new trial hearing, McNeely criticized the State's plea offer, proclaimed his belief in his innocence, indicated that he was only amenable to a plea deal involving much more probation time and less prison time, and made clear that he believed there were good reasons to proceed with a trial.

Given this record, the trial court was entitled to find that McNeely failed to show that a reasonable likelihood exists that he would have accepted the State's plea offer, but for his trial counsel's failure to review the second video file and discuss it

11

with him. See *Jacobs v. State*, 306 Ga. 571, 574 (2) (a) (832 SE2d 363) (2019) (defendant failed to show reasonable probability that she would have accepted plea offer, where her trial lawyers testified that she "was extremely adamant that she was not guilty and had acted in self-defense"); *Port v. State*, 295 Ga. App. 109, 112-113 (2) (b) (671 SE2d 200) (2008) (defendant failed to show reasonable probability that he would have accepted plea offer if he had been "fully advised of the evidence to be presented against him at trial," where defendant "indicated at the motion for new trial hearing that he rejected the . . . plea . . . because of the undesirable term of confinement"). Accordingly, the trial court committed no error in rejecting McNeely's ineffective assistance claim and denying his motion for new trial.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*