NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 26, 2025

S25A0778.  SCOTT v. THE STATE.

MCMILLIAN, Justice.

Appellant Anthony Scott was convicted of malice murder and other charges in connection with the shooting death of his wife, Cathy Scott.[1]  On appeal, Scott argues that his trial counsel rendered ineffective assistance by failing to explore the possibility

---

[1] Cathy died on March 14, 2011.  On April 27, 2011, a Lee County grand jury indicted Scott for malice murder (Count 1), aggravated assault (Count 2), felony murder (Count 3), and possession of a firearm during the commission of a felony (Count 4).  At an October 2012 trial, a jury found Scott guilty of all counts.  Scott was sentenced to life in prison for malice murder, plus five years probated for the firearm count, running consecutive to Count 1; the court purported to merge both the felony murder and aggravated assault counts into the malice murder conviction.  In actuality, Count 2 (felony murder) was vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 371–72 (1993).

Scott filed a timely motion for new trial on November 26, 2012, which was amended by new counsel on July 3, 2023.  Following a hearing on October 10, 2023, the trial court denied Scott's motion for new trial, as amended, on January 7, 2025.  Scott filed a timely notice of appeal on February 6, 2025, and the case was docketed to the April 2025 term of this Court and thereafter submitted for a decision on the briefs.

that Scott acted under delusional compulsion. Scott also argues that in connection with his motion for new trial, the trial court abused its discretion in denying a request for another continuance to obtain medical records, get a psychological evaluation, and locate an expert witness to support that claim. For the reasons that follow, we affirm.

1. The evidence presented at trial showed Scott shot and killed his wife Cathy after a period of marital discord over financial problems and Scott's suspicions that Cathy was cheating on him. In February 2011, Scott learned from the couple's adult son that Cathy wanted to leave Scott and get a divorce. On the evening of March 14, Scott's neighbor—who was a close friend with the Scotts and whom Scott had confided in about Cathy wanting to get a divorce and that she had been cheating on him—heard the "pop" of three gunshots, went around to the front of his house, saw Scott, and asked "[H]ey, brother, what's going on?" Scott responded, "I killed Cat…." Scott then went up and down the steps and walked over to where Cathy was lying on the ground and shot her two more times.

2

The neighbor testified that he saw the last shot.

The neighbor then called 911, as did Scott. Scott told a police officer over the phone, "It's me doing the shooting." When the same officer arrived on scene and asked Scott what happened, Scott said that he shot Cathy because of her adultery. The officer arrested Scott, and as Scott sat in the officer's patrol car, Scott called out to another officer on scene and told him that "he shot her, that she'd been messing around." Scott had also left a voicemail for his son, saying "I killed your mom. I'm sorry. God bless."

Cathy died from being shot multiple times in her abdomen, chest, neck, and head. Ballistics evidence confirmed that all of the bullets recovered were fired from the two pistols recovered from Scott when he was arrested.

Scott gave two interviews with law enforcement officers after his arrest. During those interviews, Scott again admitted shooting Cathy but said that he had "blacked out" and could not remember specific details about the shooting.

At trial, Scott testified in his own defense. According to Scott,

3

on March 11, he found divorce paperwork Cathy had requested. The next day, he found what he believed to be a photograph of another man's penis on Cathy's old cell phone. On the morning of March 14, Scott confronted Cathy about the photo as she was leaving for work, and she denied knowing anything about it. Scott then left to run an errand before he visited Cathy at work, where she said they needed to get the divorce "squared away" when she got home. When Scott arrived back home, he drank some beer and vodka, changed clothes, and put two loaded .22-caliber pistols in his pants pockets. When Cathy returned home from work, the two spoke under the carport; she asked Scott about signing the divorce papers, and he again confronted her about the photo.

According to Scott, "that's when everything went ballistic.… She began to curse me and she began to say … if the picture's on there, I liked it, and so, evident[]ly, I took a picture of it," and she laughed "[v]ery mocking and deviously," and "it just went to the point where that I just snapped. I don't – I don't know … what happened after that." Scott testified that he did not remember the

actual shooting. The next thing Scott remembered, "I realized that she was lying on the ground." Although Scott testified, "I don't remember pulling the trigger. I don't remember pulling the weapons out. I said I snapped…." Scott also acknowledged, "[M]y wife had been shot by me." Scott further acknowledged that he felt like Cathy had been "unfaithful," and that "[s]he was being disloyal to me. She lied to me on several things…. She just betrayed me as a fool."

Scott's trial counsel requested and received a jury charge on voluntary manslaughter and argued to the jurors that they should only find him guilty of that charge because there was "adequate provocation to mitigate," and Scott "was in a rage…. It was sudden passion…. There was not a cooling off period." The jury found Scott guilty on all counts as charged, however, including malice murder.

Scott timely filed a motion for new trial through his trial counsel. In 2018, the trial court sent a letter to Scott informing him of the death of his trial counsel, who had died in 2016, and inquiring about whether Scott wished to retain new counsel or apply to have new counsel appointed to pursue his still-pending motion for new

trial. After additional communications, the trial court entered an order on May 10, 2021, appointing the circuit public defender as Scott's new counsel for his motion for new trial and subsequent appeal, and on May 14, 2021, the circuit public defender's office filed an entry of appearance on Scott's behalf. On February 21 and March 4, 2022, Scott filed, pro se, two affidavits, averring:

> Prior to trial I stated to my attorney … that I was shooting at a man with a sword raised and coming at me saying that she's mine[]. She don't belong to you. You must die! Therefore, my course of action was to protect myself by firing the weapon I had on me.

In February 2023, the trial court noticed a hearing by video conference to be held on April 12 on Scott's motion for new trial. At that hearing, an attorney from the circuit public defender's office appeared on behalf of Scott and indicated that she was not prepared to go forward with Scott's motion for new trial at that time, and the hearing was continued. On May 22, 2023, the trial court entered a scheduling order on Scott's motion for new trial. In that order, the trial court found that Scott had "not been adequately represented to date concerning his motion for new trial"; directed that "Defendant

6

shall, if necessary, file an amended motion for new trial by July 1, 2023; and advised that "[t]he court will set a hearing on defendant's motion for new trial in August of 2023. The hearing will be video recorded and all attorneys of record shall be prepared to go forward at that time."

On July 3, 2023, Scott filed an amended motion for new trial, which first raised his claim that trial counsel rendered ineffective assistance by failing to pursue an insanity defense and requested "[a]dditional time … to obtain Defendant's health records, to request a mental health evaluation, and possibly to obtain the opinion of an expert witness." The scheduled August hearing on Scott's motion was continued to September and then continued again. On September 20, 2023, the trial court noticed another hearing by video conference, this time to be held on October 10, 2023.

At that hearing, Scott's counsel requested "even additional time" to investigate the ineffectiveness claim. But the trial court explained that it had already continued the hearing several times to allow counsel more time to conduct her investigation in support of

7

the motion for new trial, which had been pending for "quite some[ ]time." The trial court thereafter denied the request for an additional continuance and proceeded with the hearing.

At the hearing, Scott testified:

> I told my [trial] attorney that … I had a man coming at me with a sword saying, "She's not yours. She's mine." Coming at me with a sword and "You can't have her."

> And at that time frame, I used my protection what I had on me, with a license to carry, and I fired at this man coming at me. And in doing so, that was a result. I didn't, nor have I intended, shooting at my wife, Cathy Scott.

Scott testified that he told his trial counsel this story on several occasions before trial. Scott also testified that he has a history of head injuries; that when he was in the military, he was diagnosed with mental health problems, stating "I recall that I had a problem with – it's schizophrenia, narcissistic something – narcissistic, and dyslexia"; that he received counseling for those conditions, including during his present incarceration; and that he believes he can see the future "with the inspiration of the Holy Spirit, yes. I've had visions and dreams and I still do."

On January 7, 2025, the trial court entered its order denying Scott's motion for new trial. The trial court ruled that Scott's ineffectiveness claim failed for lack of prejudice because Scott failed to provide any medical evaluations or other independent evidence of his alleged insanity at the time of the shooting outside of his own self-serving testimony, which the trial court found lacked credibility, as it was refuted by Scott's statements to law enforcement officers after the shooting and other evidence presented at trial.

2. As an initial matter, we consider Scott's contention that the trial court abused its discretion in denying him additional time to obtain evidence to support his motion for new trial. "Whether to grant a motion for continuance is entirely within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Yarn v. State*, 305 Ga. 421, 425 (2019) (punctuation omitted); see also OCGA § 17-8-22. Here, the trial court granted multiple continuances to allow Scott's appellate counsel "more time to get ready for the hearing" before finally deciding Scott's motion for new trial. Moreover, the trial court

9

waited approximately two and a half years after appointment of appellate counsel—and waited several more months after appellate counsel amended Scott's motion for new trial to add the ineffectiveness claim—to hear and rule upon Scott's motion. Under these circumstances, it was not an abuse of discretion for the trial court to refuse even more time for Scott to obtain evidence to support his claim. See *Geiger v. State*, 295 Ga. 648, 651 (2014) (no abuse of discretion where trial court denied second continuance after granting one continuance to give defendant additional time to conduct testing, yet none was ever conducted, and no record evidence of such testing existed even at the time of appeal).[2]

3.  We now turn to Scott's ineffective assistance claim: that his trial counsel rendered constitutionally ineffective assistance by

---

[2] Scott has recently submitted, appearing pro se, documents in this Court complaining of his post-conviction counsel's representation. To the extent those documents purport to be legal motions raising new claims, we exercise our discretion to not recognize them under the circumstances of this case. See *Johnson v. State*, 315 Ga. 876, 890 (2023) ("[C]ourts retain discretion to allow hybrid representation. That includes the discretion to recognize pro se filings.") (citation omitted). Scott may attempt, if he wishes, to pursue claims of ineffective assistance of post-conviction counsel through a petition for a writ of habeas corpus. See *King v. State*, 304 Ga. 349, 351 (2018).

failing to explore the possibility that Scott acted under delusional compulsion at the time of the shooting, such that Scott could be found not guilty by reason of insanity.[3] Scott argues that his statements to his trial counsel demonstrated that Scott was delusional at the time of the crime, such that his trial counsel should have taken steps to investigate Scott's mental health, like obtaining his medical records and requesting a mental health evaluation, and that counsel's failure to do so constituted ineffective assistance. For the reasons discussed below, this claim fails.

To succeed on a claim of ineffective assistance of counsel, Scott must show both that his counsel's performance was deficient and that such deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficiency prong, Scott must demonstrate that his counsel "performed at trial

---

[3] OCGA § 16-3-3 provides:
A person shall not be found guilty of a crime when, at the time of the act … constituting the crime, the person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime.

11

in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Bacon v. State*, 316 Ga. 234, 239 (2023) (citation and punctuation omitted). To establish prejudice, Scott "must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different." *Bates v. State*, 313 Ga. 57, 62 (2022). And if Scott fails to make a sufficient showing on either the deficiency or the prejudice prong, we need not address the other prong. See *Washington v. State*, 313 Ga. 771, 773 (2022).

We conclude that the trial court correctly determined that Scott has failed to carry his burden of demonstrating prejudice under this standard. The trial court did not clearly err in finding that Scott's self-serving testimony about his state of mind at the time of the shooting was not credible, particularly because Scott waited until over a decade after the shooting to claim that he thought he was shooting at a man with a sword and had no intent to shoot Cathy—a story that contradicted all his previous accounts. See *Gramiak v. Beasley*, 304 Ga. 512, 517 (2018) (recognizing trial

12

court is free to reject defendant's self-serving testimony based on defendant's previous contradictory testimony in making its credibility determinations at a motion for new trial hearing). And Scott has not produced any other evidence supporting that he was legally insane at the time of the crimes. See *Allen v. State*, 317 Ga. 1, 10 (2023) (concluding that appellant failed to show prejudice when he "failed to present at the motion for new trial stage any expert testimony or other evidence indicating that he has in fact suffered from mental illness at any point, let alone at the time of the crime such that he would be able to avoid criminal responsibility"); *Mims v. State*, 304 Ga. 851, 856 (2019) ("Mims did not present any evidence that she had ever been evaluated by an expert or that a psychologist reviewed the record and formed an opinion as to her culpability at the time of the offense, and speculation about results if she had is not enough. As a result, Mims has not shown what the result of any additional examination would have been, and thus fails to show that the result of her trial would have been different if such an evaluation had been pursued.").

Accordingly, Scott has not carried his burden of showing prejudice under *Strickland*, and his ineffectiveness claim fails.

*Judgment affirmed. All the Justices concur.*